### MILWAUKEE MOBILIZATION FOR SURVIVAL et al., Plaintiffs,

v.

### MILWAUKEE COUNTY PARK COMMISSION et al., Defendants.

#### No. 78–C–495.

United States District Court,
E. D. Wisconsin.

Oct. 3, 1979.

Perry & First by Curry First, Milwaukee, Wis., for plaintiffs.

Robert P. Russell, Corp. Counsel, by James T. McClutchy, Jr., Asst. Corp. Counsel, Milwaukee, Wis., for defendants.

## DECISION AND ORDER

MYRON L. GORDON, District Judge.

This is an action for declaratory, injunctive and monetary relief brought under 42 U.S.C. § 1983. The plaintiffs attack on first amendment grounds a variety of county ordinances and a state statute in connection with their attempts to use a particular public park for political rallies. The case is before me on cross motions for summary judgment. For the reasons which follow, each side's motion will be granted in part and denied in part. Since I am unable to resolve all the issues in the case at this juncture, certain matters discussed below will remain for trial.

### I. BACKGROUND

In the complaint in this case filed on August 3, 1978, and in the first amended complaint filed on August 23, 1978, the plaintiffs broadly challenged the permit system employed by the defendant park

commission in regulating access to the public parks. The plaintiffs contend that the permit system constitutes a prior restraint on their first amendment rights of free speech, assembly and association.

More specifically, the plaintiffs alleged that the defendants, acting under the authority of county ordinance 47.02, unconstitutionally denied them a permit to use a particular park for their political demonstration scheduled for August 5, 1978, because such park was not one of the five parks designated by the park commission as an assembly area. The plaintiffs alleged that a non-political group had held a festival in the same park earlier in the summer of 1978.

After an oral hearing, on August 4, 1978, I granted the plaintiffs' motion for a temporary restraining order, enjoining the defendants from interfering with the plaintiffs' scheduled rally at the particular park they had chosen; that order expired by its own terms ten days later.

In their original complaint, the plaintiffs also attacked county ordinance 47.04(2) as an unconstitutional regulation of the right to distribute first amendment literature and ordinance 47.30 and Wis.Stat. § 59.24, both authorizing the arrest of persons who violate county ordinances in the parks.

On July 27, 1979, the plaintiffs filed a second amended complaint and a motion for a temporary restraining order to prohibit the defendants from interfering with their sale of bumper stickers and other such items at their August 4, 1979, rally, for which a park permit had been granted. The defendants refused to grant the plaintiffs permission to sell political paraphernalia pursuant to ordinance 47.04(1), which forbids sales of any kind in the parks. After considering the parties' written submissions, on August 3, 1979, I enjoined the defendants from applying ordinance 47.04(1) to the plaintiffs' planned sales. I declined, however, to enjoin the application of two other county ordinances, 47.16 and 47.28, because there was no indication that the defendants intended to apply these laws to the plaintiffs' August 4th rally.

The issue of the constitutionality of the above ordinances and state statute is now before me, as is the question of what damages the plaintiffs have sustained as a result of the defendants' challenged acts and practices. Before considering these matters, the defendants have raised two preliminary issues.

## II. MOOTNESS

Since I entered the first injunction in this case on August 4, 1978, the defendants have repealed ordinance 47.02 and have replaced it with a new provision outlining the procedure for obtaining permits to use the public parks. The defendants argue that the new ordinance is constitutional, that they never intended to deny the plaintiffs their constitutional rights, and that, therefore, the case is moot.

■ This position is erroneous. The adoption of a new permit system subsequent to the filing of the original complaint does not moot the plaintiffs' claim for declaratory, injunctive and monetary relief. See *Black v. Brown*, 513 F.2d 652, 655 (7th Cir. 1975). The plaintiffs challenge the constitutionality of the new ordinance as well as the other five provisions noted above, and also seek damages on the ground that the defendants have acted in bad faith. These allegations of continuing unconstitutionality mean that there is still a live controversy in this case.

## III. STANDING

The defendants dispute the plaintiffs' standing to attack the constitutionality of ordinances 47.16 and 47.28. Ordinance 47.16 prohibits the use of threatening, abusive, profane and indecent language in the public parks, and ordinance 47.28 makes a person granted a park permit liable for his own negligence and for that of his agents and servants. The defendants contend that because it does not appear that these ordinances will ever be applied to the plaintiffs' political rallies, any injury to the plaintiffs flowing from them is purely speculative.

■ The plaintiffs assert that these ordinances, and the other regulations here under attack, are vague and overbroad and therefore chill the exercise of first amendment rights. However, "[a]llegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm . . . ." *Laird v. Tatum*, 408 U.S. 1, 13–14, 92 S.Ct. 2318, 2325, 2326, 33 L.Ed.2d 154 (1972). There is not the slightest indication in this case that the plaintiffs are threatened with injury resulting from the unconstitutional application of ordinance 47.28. The plaintiffs have not alleged that the defendants have threatened to apply this ordinance to their demonstrations; nor have they shown the court instances in the past where the defendants have applied this regulation in an unconstitutional manner. In my opinion, the record affords too shallow a basis on which to conclude that the plaintiffs are threatened with the necessary specific harm for them to have standing to challenge ordinance 47.28.

■ I believe the plaintiffs also lack standing to challenge ordinance 47.30 and Wis.Stat. § 59.24. These regulations authorize the arrest of individuals violating county ordinances in the public parks. Certainly there is nothing inherently chilling about these provisions, and the plaintiffs have not alleged that the defendants have threatened to apply these measures to their activities. In these circumstances, I believe that any injury the plaintiffs might suffer as a result of the application of these provisions is too speculative and remote to furnish a basis for standing to challenge their validity.

■ I find that ordinance 47.16 stands on a different footing. This measure regulates in a direct and certain way pure speech. If found to be vague and overbroad, then its chilling effect upon protected expression is not subjective or imaginary but objective and real. Statutes aimed solely at the spoken word are subject to much closer scrutiny than statutes aimed at conduct which have only an incidental impact on speech; notions of standing have therefore been broadened with respect to them. *See Lewis v. City of New Orleans*, 415 U.S. 130, 133–34, 94 S.Ct. 970, 39 L.Ed.2d 214 (1974); *Gooding v. Wilson*, 405 U.S. 518, 520–22, 92 S.Ct. 1103, 31 L.Ed.2d 408 (1972). I believe that the plaintiffs have standing to test the constitutionality of ordinance 47.16.

■ For the same reasons, I believe the plaintiffs have standing to attack county ordinance 63.01, which also proscribes the use of abusive, profane and vulgar language, but which is not limited in its application to the public parks. The defendants have not suggested that this measure could not be applied to the activities of the plaintiffs and others in the parks. Since its regulatory impact closely parallels that of ordinance 47.16, judicial economy will be served by my considering its constitutionality in connection with ordinance 47.16.

## IV. CONSTITUTIONALITY OF CHALLENGED ORDINANCES

### A. *Ordinance 47.02*

Subsequent to the restraining order I issued on August 4, 1978, the defendants repealed and recreated ordinance 47.02. The new ordinance differs from its predecessor in three principal respects: (1) a permit may now be obtained to use any of the county parks, not simply one of those designated by the park commission as an assembly area; (2) the new ordinance provides that a permit will be issued except in certain circumstances; and (3) the new ordinance lists seven items which must be included in applications for permits. The question is whether these modifications have cured the constitutional infirmities of old ordinance 47.02.

The defendants concede that the new provision "constitutes somewhat of a prior restraint on rights guaranteed by the First Amendment of the United States Constitution." Brief in Opposition at 1. However, because the ordinance establishes only a "use" permit system and does not censor speech, the defendants maintain "that whatever measure of prior restraint there

may be, it does not rise to a constitutionally prohibited level." *Id.*

 In my opinion, this argument misses the mark. The defendants are correct in their premise that a prior restraint is not automatically unconstitutional, although it is presumptively invalid. *See, e. g., New York Times Co. v. United States,* 403 U.S. 713, 91 S.Ct. 2140, 29 L.Ed.2d 822 (1971). There is also some authority for the proposition that a prior restraint leveled on the right to assemble in a public place may be scrutinized less rigorously than a prior restraint directed at pure speech. *Cf. Cox v. New Hampshire,* 312 U.S. 569, 61 S.Ct. 762, 85 L.Ed. 1049 (1941) (upholding narrowly drawn parade permit law). This does not mean, however, that the prior restraint imposed by the instant permit system has surmounted the high barriers requisite for a finding of constitutionality.

 I believe that two of the five provisions of ordinance 47.02 are facially unconstitutional in two respects. First, it is well established that

". . . a law subjecting the exercise of First Amendment freedoms to the prior restraint of a license, without narrow, objective, and definite standards to guide the licensing authority, is unconstitutional." *Shuttlesworth v. City of Birmingham,* 394 U.S. 147, 150–51, 89 S.Ct. 935, 938, 22 L.Ed.2d 162 (1969).

The rationale for requiring "precise and clear standards" is

". . . that the danger of censorship and of abridgement of our precious First Amendment freedoms is too great where officials have unbridled discretion over a forum's use. Our distaste for censorship—reflecting the natural distaste of a free people—is deep-written in our law." *Southeastern Promotions, Ltd. v. Conrad,* 420 U.S. 546, 553, 95 S.Ct. 1239, 1244, 43 L.Ed.2d 448 (1975).

This constitutional mandate has not been limited to the prior restraint of pure speech, but has been applied in cases analogous to the one at bar. *See Kunz v. New York,* 340 U.S. 290, 71 S.Ct. 312, 95 L.Ed. 280 (1951) (reversing conviction obtained under ordinance which required a permit to hold public worship meetings on the streets); *Niemotko v. Maryland,* 340 U.S. 268, 71 S.Ct. 325, 95 L.Ed. 267 (1951) (reversing disorderly conduct conviction for holding meeting in city park without a permit, where permit administration had been based only on custom); *Saia v. New York,* 334 U.S. 558, 68 S.Ct. 1148, 92 L.Ed. 1574 (1948) (invalidating city ordinance forbidding the use of sound amplification devices in public places without permit issued by chief of police whose discretion was not subject to any standards).

 Applying this principle to the instant ordinance, I find that subsection (5), the provision requiring permits for parades and processions, is clearly unconstitutional because it does not include any standards limiting the discretion of the permit-issuing authority. *Shuttlesworth, supra.* Moreover, I believe the standards contained in subsection (1) are not sufficiently "narrow, objective, and definite" to provide assurance that the denial of a permit is not for an illegitimate purpose.

 The standards in subsection (1) which especially lend themselves to arbitrary enforcement are the requirements that the space requested be "appropriate for the activity to be conducted" and that "the activity will not . . . unreasonably interfere with general public enjoyment or use and enjoyment by other permittees." To the extent these requirements are intended to ensure that two groups do not assemble in a particular park at the same time, subsection (1) already provides in another place that a permit will be denied if the requested space has been reserved by another activity. To the extent these requirements could be used to deny a permit to an individual or group who espouses views found by members of the general public to be noxious or disturbing, the standard fails to provide the necessary assurance that first amendment rights will not be sacrificed to the whim of the licensing official. *See Street v. New York,* 394 U.S. 576, 592, 89 S.Ct. 1354, 22 L.Ed.2d 572

**1218**

(1969); *Collin v. Chicago Park District*, 460 F.2d 746, 754–57 (7th Cir. 1972). These standards are impermissibly vague and overbroad and are therefore void on their face. *See International Society for Krishna Consciousness v. Rochford*, 585 F.2d 263, 268 (7th Cir. 1978).

■ The second respect in which subsections (1) and (5) fail to pass constitutional muster is in the omission of any due process safeguards. "If a regulation has the potential to impinge upon First Amendment rights, that regulation must provide for procedural due process." *Id.* at 272. The Supreme Court has spelled out the due process protections which must accompany any prior restraint system. *See Freedman v. Maryland*, 380 U.S. 51, 59, 85 S.Ct. 734, 13 L.Ed.2d 649 (1968) (requiring the licensing authority to seek prompt judicial review of a decision restraining expressive activities).

The defendants' suggestion that *Freedman* is limited to prior restraints imposed on pure speech is soundly refuted by recent pronouncements: "If a scheme that restricts access to the mails must furnish the procedural safeguards set forth in *Freedman* [see *Blount v. Rizzi*, 400 U.S. 410, 419–21, 91 S.Ct. 423, 27 L.Ed.2d 498 (1971)], no less must be expected of a system that regulates use of a public forum." *Southeastern Promotions, supra*, 420 U.S. at 560, 95 S.Ct. at 1247. Without question, the parks involved in this case constitute public forums. *See, e. g., Hague v. CIO*, 307 U.S. 496, 515, 59 S.Ct. 954, 83 L.Ed. 1423 (1939).

In sum, I hold that subsections (1) and (5) of ordinance 47.02 are unconstitutional on their face because they impose the heavy sanction of a prior restraint without providing both the requisite narrow standards for limiting the licensor's discretion and adequate due process safeguards. The plaintiffs are accordingly entitled to a permanent injunction restraining the application of these subsections to their rallies.

■ Subsections (2), (3) and (4), however, do not present the same problems. Subsection (3), which prohibits persons from interfering with the activities of permit holders, and subsection (4), which prohibits permittees from harassing members of the public, offer no obstacles to a finding of constitutionality. Subsection (2), which prohibits the use of sound amplification devices in a manner that "unreasonably interfere[s] with the use and enjoyment of the park or parkway by the public," "is precise enough in meaning to avoid the problem of vagueness." *Rochford, supra*, 585 F.2d at 270. Since subsection (2) does not require that a person first obtain a permit before using sound equipment, the regulation does not impose a prior restraint; thus, no problems regarding the delegation of unbridled discretion or the provision of due process safeguards are presented.

**B.** *Ordinance 47.04*

■ This ordinance must be condemned in accordance with the principles discussed above. Subsection (1) prohibits the sale of "any tangible or intangible article, merchandise, or thing" and the solicitation "for any trade, occupation, business or profession, or for alms . . . without the written permit of the Park Commission." As I suggested in my order granting the plaintiffs' motion for a preliminary injunction dated August 3, 1979, this provision is an unconstitutional delegation of licensing authority because it subjects the exercise of first amendment activities to the unrestricted discretion of a park official. *See Murdock v. Pennsylvania*, 319 U.S. 105, 63 S.Ct. 870, 87 L.Ed. 1292 (1943); *Rochford, supra*, 585 F.2d 263; *Citizens for a Better Environment v. Park Ridge*, 567 F.2d 689 (7th Cir. 1975); *Gall v. Lawler*, 322 F.Supp. 1223 (E.D.Wis.1971).

■ Subsection (2) prohibits the distribution or display of "any card, handbill, sign, placard, target, banner, flag (except that of the United States), or advertisement of any kind . . . without the written permit of the Park Commission." This provision impinges directly on the right to pursue first amendment activities in a public forum without prior recourse to the unlimited discretion of a licensor. I hold that this subsection, and subsection (1), are unconsti-

tutional on their face, and a permanent injunction will be entered accordingly.

## C. *Ordinances 47.16 and 63.01*

 Ordinance 47.16(1) provides that "[n]o person shall use threatening, abusive, insulting, profane, or indecent language, nor be guilty of conduct that is abusive, insulting, obscene, indecent, or constitutes a breach of the peace." Subsection (2) authorizes the removal from any park of a person who violates subsection (1). In similar terms, ordinance 63.01 makes it "unlawful for any person to make use of any profane, vulgar, or obscene language, or of any loud, boisterous, insulting, or abusive language tending to incide a breach of the peace, or inimical to peace and good order." Insofar as these regulations are directed at pure speech, they are vague and overbroad and are thus void on their face.

In *Gooding v. Wilson, supra*, 405 U.S. 518, 92 S.Ct. 1103, 31 L.Ed.2d 408, the Supreme Court reversed the petitioner's conviction obtained under a statute which proscribed the use of "opprobrious words or abusive language, tending to cause a breach of the peace . . . ." 405 U.S. at 519, 92 S.Ct. at 1104. Finding that the statutory prohibition did not fall within the "fighting words" exception of *Chaplinsky v. New Hampshire*, 315 U.S. 568, 62 S.Ct. 766, 86 L.Ed. 1031 (1942), and that the state courts had not given the statute such a limiting construction, the Court condemned the statute because it made "it a 'breach of peace' merely to speak words offensive to some who hear them, and so sweeps too broadly." *Id.* 405 U.S. at 527, 92 S.Ct. at 1108. Relying on *Gooding*, the Court in *Plummer v. City of Columbus*, 414 U.S. 2, 94 S.Ct. 17, 38 L.Ed.2d 3 (1973) (per curiam), reversed the conviction of a taxi driver who had abused a female passenger with "a series of absolutely vulgar, suggestive and abhorrent, sexually-oriented statements." *Id.* at 3–4, 94 S.Ct. at 18 (Powell, J., dissenting). The ordinance, which prohibited "menacing, insulting, slanderous, or profane language," was found to be overbroad and thus unconstitutional on its face.

These decisions and a host of others make it clear that, with only a few narrow exceptions, none of which applies here, "government may not purge public dialogue of unwelcome words, just as it may not prohibit unwelcome ideas." L. Tribe, American Constitutional Law § 12–10, at 619 (citation omitted). Because ordinance 63.01 and the first clause of ordinance 47.16(1) are aimed at cleansing public discourse of objectionable matter without regard for the protected character of the speech, they must be invalidated, and their application to the plaintiffs' activities must be enjoined.

 However, in my opinion, the terms in subsection 47.16(1) which identify certain types of conduct have been given a sufficiently narrowing construction so as to render the second clause of this subsection constitutional. *See State v. Givens*, 28 Wis.2d 109, 115–17, 135 N.W.2d 780 (1965). In *Givens*, the court construed terms very similar to those used in the instant ordinance and held that they were limited to conduct which "tend[s] to disrupt good order and to provoke a disturbance." *Id.* at 115, 135 N.W.2d at 784. It is, of course, well established that conduct which constitutes a breach of the peace is not immune from state regulation simply because it occurs in connection with first amendment activity. *See Adderley v. Florida*, 385 U.S. 39, 87 S.Ct. 242, 17 L.Ed.2d 149 (1966); *Cox v. Louisiana*, 379 U.S. 559, 85 S.Ct. 476, 13 L.Ed.2d 487 (1965); *City of Wauwatosa v. King*, 49 Wis.2d 398, 182 N.W.2d 530 (1971). Construed as limited to conduct constituting a breach of the peace, I believe the second clause of ordinance 47.16(1) is not unconstitutionally vague because it "sufficiently identifies the type of behavior which the legislature intended to be contrary to law." *Givens, supra*, 28 Wis.2d at 115, 135 N.W.2d at 784.

## D. *Validity of $20 Permit Fee*

At its meeting on July 12, 1979, the park commission established a $20 fee to be charged for "special use permits." The defendants claim that the fee is reasonable because it "is used to defray the costs of the

permit system in that it covers the staff time of those who issue permits and the person on duty in the park at the time and place of the rally or assembly who otherwise would not be so assigned." Affidavit of Robert J. Mikula. The plaintiffs contend that the defendants have not met their burden of proving that the permit fee is essential to cover reasonable and necessary expenses.

The law to be applied to such fees is relatively clear. On the one hand, "[a] state may not impose a charge for the enjoyment of a right granted by the federal constitution." *Murdock v. Pennsylvania,* *supra,* 319 U.S. at 113, 63 S.Ct. at 875. However, "a nominal fee imposed as a regulatory measure to defray the expenses of policing the activities in question" is permissible. *Id.* at 113–14, 63 S.Ct. at 875. In determining the validity of a particular licensing fee, the burden is on the defendants "to demonstrate that the fees were necessary to cover the reasonable costs of the licensing system, and that the fees were used for no other purpose than to meet those costs." *Bayside Enterprises, Inc. v. Carson,* 450 F.Supp. 696, 705 (M.D.Fla.1978).

In my opinion, the defendants have met their burden. The Mikula affidavit, fairly construed, establishes that the $20 permit fee is necessary to meet the reasonable costs of the permit system. The fee is a nominal one, and the defendants are entitled to have that portion of the complaint alleging unconstitutionality of the $20 permit fee dismissed.

## V. LIABILITY OF DEFENDANTS

The plaintiffs seek monetary relief, in the form of compensatory and punitive damages, against three governmental entities and several individual defendants. It is now clear that this court has jurisdiction under § 1983 to grant the relief sought against these defendants. *See Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (municipalities and other local governing bodies are "persons" under § 1983); *Carey v. Piphus,* 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978) (recovery of compensatory damages); *Spence v. Staras,* 507 F.2d 554, 558 (7th Cir. 1974) (recovery of punitive damages). The remaining question is whether the plaintiffs may recover damages against either class of defendants on this motion for summary judgment.

### A. *Liability of Individual Defendants*

The liability question has two components; whether the plaintiffs' constitutional rights were violated and, if so, whether the defendants have established their good faith defense. I will answer these questions with reference to the five alleged instances of constitutional deprivation.

I believe that two of the plaintiffs' allegations, the failure of the defendants to repeal old ordinance 47.02 in a more timely fashion, and the failure of the defendants to alter ordinances 47.04, 47.16, 47.28 and 63.01, are insufficient as a matter of law to support a finding of unconstitutional conduct on the part of the defendants. I believe that it is inappropriate to impose monetary liability on officials whose only alleged sin was the failure to redraft arguably unconstitutional measures.

I have described, above, my conclusion that the constitutional rights of the plaintiffs were violated by the defendants' refusal to permit the sale of political items at the plaintiffs' August 4, 1979, rally. This refusal was the subject of the second preliminary injunction which I issued in this case. I have also found in this opinion that the ordinance banning such sales is unconstitutional on its face. Of course, the fact that the defendants complied with the injunction does not vitiate the constitutional violation.

The adoption of new ordinance 47.-02 can be the basis of § 1983 liability if it was adopted "with full knowledge of its unconstitutionality." *Fox Valley Reproductive Health Center, Inc. v. Arft,* 454 F.Supp. 784, 787 (E.D.Wis.1978). The plaintiffs have not alleged this to be the case, and my own examination of the record persuades me that the defendants have acted in good faith. Therefore, this allegation cannot be the basis of § 1983 liability.

The plaintiffs' final allegation of unconstitutional conduct rests on the defendants' failure to issue the plaintiffs a permit to use a park not designated as an assembly area for their August 1978 rally, although a permit had been issued to a non-political group to use the same park. The plaintiffs' contention is that defendant Koplin violated their constitutional rights by not informing them, in response to their telephone inquiries, that a variance from the non-assembly area designation could have been granted by the park commission. Mr. Koplin states that he believed the calls were purely informational and that the caller never identified who he was or the name of the group seeking a permit. Mr. Koplin does admit, however, that he told the caller "that no permits are issued for Carl Zeidler Park. . . ." Affidavit of Alfred E. Koplin, filed August 4, 1978. Mr. Koplin also admits that he has imparted the information regarding a variance to persons making inquiry in the past. Koplin deposition, pp. 24–28, 32–33, 35–36.

In my view, these undisputed facts further demonstrate that there has been a violation of the plaintiffs' rights to the equal protection of the law and to freedom of speech and assembly. In relying on old ordinance 47.02 to deny permission to use Carl Zeidler park, an application of the ordinance which I held to be unconstitutional at the hearing on August 4, 1978, Tr. at 3–4, Mr. Koplin's acts violated the first amendment rights of the plaintiffs. The very fact the ordinance gave Mr. Koplin the discretion to act as he did testifies to its unconstitutional character.

In failing to advise the plaintiffs that a variance could be obtained to use Carl Zeidler park, and in flatly stating that no permits were issued to use the park, Mr. Koplin's arbitrary conduct resulted directly in a denial of the plaintiffs' equal protection rights. I believe this is true whether or not Mr. Koplin was aware of the type of activity the plaintiffs wished to conduct in the park. Although the defendants maintain that Mr. Koplin did not know that the plaintiffs intended to stage a political demonstration when he denied the permit, I find that the deposition testimony of the defendant Mikula raises a question of fact regarding this contention. Mikula deposition at 25–26. This dispute may be highly relevant to the defense of good faith, but it is not, in my judgment, at all relevant to the fact of the constitutional violation.

Before taking up the matter of defenses, I believe certain of the defendants should be dismissed insofar as the plaintiffs seek to hold them individually liable for damages. Because none of the park commissioners have personally committed acts violative of the plaintiffs' constitutional rights, I will dismiss them as individual defendants; they will, however, remain in the case for purposes of declaratory and injunctive relief. See Fox Valley, supra, 454 F.Supp. at 786. The same principles apply to William O'Donnell, the county executive. However, Mr. Koplin and Mr. Mikula will remain in the case for purposes of legal and equitable relief. Both may be held liable for the unconstitutional denial of the August 5, 1978, permit, and Mr. Koplin may be liable for his acts in connection with the denial of the permit to sell political items at the August 4, 1979, demonstration.

Mr. Koplin and Mr. Mikula have attempted to invoke the qualified good faith immunity. Fox Valley, supra. This defense has two elements:

"First, [the defendant] must be acting, not 'with the malicious intention to cause a deprivation of constitutional rights or other injury to the [plaintiff],' but 'sincerely and with a belief that he is doing right.' Second, if he meets the first test, he is liable only 'if he knew or reasonably should have known' that his act 'would violate the constitutional rights' of the plaintiff." Hostrop v. Board of Junior College District # 515, 523 F.2d 569, 577 (7th Cir. 1975) (quoting Wood v. Strickland, 420 U.S. 308, 320–31, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975)).

The plaintiffs contend that Messrs. Koplin and Mikula have acted in bad faith, with reason to know that their actions were unconstitutional; Mr. Koplin and Mr. Mikula argue the opposite.

In my judgment, this dispute cannot be resolved on motions for summary judgment. To do so would require me to weigh the evidence in the record, and this is impermissible. In *Shifrin v. Wilson*, 412 F.Supp. 1282, 1295 (D.D.C.1976), the court reached the same conclusion, stating: "In short, good faith in general and as a defense in actions for deprivations of civil rights, is almost always a question for determination by the fact-finder rather than the court on a motion for summary judgment." *See also Staren v. American National Bank & Trust Co. of Chicago*, 529 F.2d 1257, 1261 (7th Cir. 1976) ("[Q]uestions of motivation or intent are particularly inappropriate for summary judgment.").

### B. *Liability of Governmental Defendants*

The principles of recovery of damages against the governmental defendants in this case were established in *Monell, supra*, 436 U.S. at 690, 98 S.Ct. at 2035, 2036:

> "Local governing bodies, therefore, can be sued directly under § 1983 for monetary . . . relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers."

Thus, the county board of supervisors may be held liable for damages because it officially promulgated the several ordinances which have been declared unconstitutional in this opinion, under the authority of which the defendants Mr. Koplin and Mr. Mikula purported to act. The county park commission may also be found liable on the basis of its adoption of the policy of designating only five of the approximately one hundred and twenty-five county parks as public assembly areas, which restrictive designation was unconstitutional under *Collin, supra*, 460 F.2d at 752. *See* Tr. of August 4, 1978, at 2–3. However, since the board of supervisors may now be sued in its official capacity under *Monell*, there is no reason to continue with the county itself as a party. Therefore, it will be dismissed as a defendant for all purposes.

The last question is whether the qualified good faith immunity, if successfully asserted by the individual defendants, may inure to the benefit of the governmental defendants. Although *Monell* held that local governments could not enjoy an absolute immunity under § 1983, the Court expressly left undefined the scope of any official immunity such bodies might have. 436 U.S. at 701, 98 S.Ct. 2018. The only three courts to consider this question since *Monell* have reached conflicting results. *Compare Sala v. County of Suffolk*, 604 F.2d 207 (2d Cir. 1979) *and Bertot v. School District No. 1*, (10th Cir. Nov. 15, 1978) (unpublished opinion) (both holding that governmental bodies enjoy qualified immunity to same extent individual defendants do) *with Schuman v. City of Philadelphia*, 470 F.Supp. 449, 463–64 (E.D.Pa.1979) (good faith immunity not available . where policy of a municipality under attack, distinguishing *Bertot*). No case in this circuit is directly on point. *See Hostrop, supra*, 523 F.2d at 577–79 (individual defendants successfully established good faith immunity under § 1983, but school board liable under 28 U.S.C. § 1331).

In my view, the governmental defendants should be shielded by the qualified good faith immunity if it is successfully asserted by the individual defendants. Were this not the case, a governing body could be held strictly liable for the passage of an unconstitutional act no matter how carefully and reasonably the individual officials had approached their task. I find the reasoning of the court of appeals for the second circuit persuasive:

> "[W]e do not believe that § 1983, enacted by a Congress accustomed to nearly absolute municipal immunity, should be read to implement a doctrine of liability without fault." *Sala, supra*, 604 F.2d at 211.

Accordingly, if the defendants Mikula and Koplin successfully establish their qualified good faith immunity, this will also bar recovery of damages from the governmental defendants.

## VI. CONCLUSION

Therefore, IT IS ORDERED that the plaintiffs' motion for summary judgment be and hereby is granted in part and denied in part.

IT IS ALSO ORDERED that the defendants' motion for summary judgment be and hereby is granted in part and denied in part.

IT IS FURTHER ORDERED that the complaint in this action be and hereby is dismissed insofar as it asserts claims of unconstitutionality against county ordinances 47.28 and 47.30, against section 59.24 of the Wisconsin Statutes, and against the county's twenty dollar permit fee.

IT IS FURTHER ORDERED that subsections (1) and (5) of county ordinance 47.02, adopted July 12, 1979, be and hereby are declared unconstitutional and that the defendants be and hereby are permanently enjoined from applying such subsections to the plaintiffs.

IT IS FURTHER ORDERED that county ordinances 47.04 and 63.01 be and hereby are declared unconstitutional and that the defendants be and hereby are permanently enjoined from applying such ordinances to the plaintiffs.

IT IS FURTHER ORDERED that that portion of ordinance 47.16(1) which provides "No person shall use threatening, abusive, insulting, profane, or indecent language," be and hereby is declared unconstitutional and that the defendants be and hereby are permanently enjoined from applying such portion of ordinance 47.16(1) to the plaintiffs.

IT IS FURTHER ORDERED ·that the complaint in this action be and hereby is dismissed insofar as it seeks monetary damages against any of the defendants on the grounds of the defendants' failure to repeal ordinance 47.02 in a more timely fashion and to amend ordinances 47.04, 47.16, 47.28 and 63.01.

IT IS FURTHER ORDERED that the complaint in this action be and hereby is dismissed insofar as it seeks monetary damages against any of the defendants on the grounds that new ordinance 47.02 and the twenty dollar permit fee were adopted in bad faith, with knowledge of their alleged unconstitutionality.

IT IS FURTHER ORDERED that the complaint in this action be and hereby is dismissed insofar as it seeks monetary damages against the defendant park commissioners and the county executive in their individual capacities.

IT IS FURTHER ORDERED that the defendant county of Milwaukee be and hereby is dismissed from this action.