**Thomas J. LACEY, Robert Dudash, Edward C. Silverstein and the Committee to Re-Elect Thomas J. Lacey,**

v.

**The BOROUGH OF DARBY, PA., the Honorable Louis Saraullo, Mayor of the Borough of Darby the Police Department of the Borough of Darby, Pa.**

Civ. A. No. 83–5391.

United States District Court,
E.D. Pennsylvania.

Sept. 20, 1985.

Kenneth R. Schuster, Media, Pa., Edward C. Harkin, Collingdale, Pa., for plaintiffs.

Peter J. Nolan, Media, Pa., for defendants.

## OPINION

LUONGO, Chief Judge.

Plaintiffs in this action claim that the Borough of Darby and certain Borough

officials violated their first and fourteenth amendment rights in connection with a 1983 election campaign. Defendants have moved for summary judgment. For the reasons stated below, I will grant defendants' motion as to the Darby Police Department and deny it as to Mayor Louis J. Saraullo and the Borough of Darby.

## I. *Facts and Contentions*

Certain facts are not in dispute. In 1983, plaintiff Thomas J. Lacey was seeking re-election as a District Justice for the Boroughs of Darby and Colwyn. Lacey and members of his reelection committee requested and received permission from the mayor of Darby, Louis J. Saraullo, to use sound equipment during the spring primary campaign. Shortly before the November 8, 1983 election Robert Dudash and Edward Harkin, members of the Committee to Re-Elect Thomas J. Lacey, again used sound equipment to play music and broadcast speeches. They were stopped by Darby police officer Dominic Squillace.

Plaintiffs' allegations concerning what happened next are set forth in their complaint, the depositions of Dudash, Harkin and Thomas Lacey, and an affidavit submitted by Harkin. According to plaintiffs, Officer Squillace told them they could not use sound equipment because they did not have a permit. Plaintiffs claim the mayor had said they did not need a permit. They therefore believed they had a right to use the equipment and refused to stop. Plaintiffs claim the officer then arrested Dudash, Harkin and four children who were with them.

Plaintiffs further submit that Lieutenant Robert Smythe, Darby's chief of police, told plaintiffs' counsel that the police were acting under orders from the mayor. The parties were released, but were threatened that they would be arrested and charged if they continued to use sound equipment. The mayor later told plaintiffs' counsel that use of sound equipment was regulated by Darby Ordinance § 106–11.

Plaintiffs claim that § 106–11 deals only with the use of sound equipment by peddlers and does not regulate equipment used in a political campaign. They assert that use of sound equipment was Lacey's only effective means of countering certain accusations made against him on the eve of the election. According to the complaint, the mayor is a member of the same political party as Lacey's opponent and exercised his police power to thwart Lacey's bid for reelection. Plaintiffs seek a declaration that § 106–11 cannot be used to regulate the use of sound equipment during an election and an order enjoining defendants from interfering with plaintiffs' use of such equipment in the exercise of their first amendment rights. Plaintiffs further request damages for the deprivation of their constitutional rights, attorneys' fees and certain other relief.

In their motion for summary judgment, defendants note that the complaint does not refer to a specific civil rights statute. They discuss plaintiffs' claims in light of the requirements of 42 U.S.C. § 1983, and urge that the complaint is deficient in failing to allege that defendants acted under color of law.

Defendants further contend that the Police Department of the Borough of Darby is not a separate entity and cannot be sued. They claim the mayor acted reasonably and in good faith, and is immune from liability. The Borough of Darby, according to defendants, is entitled to summary judgment because plaintiffs have neither alleged nor shown that the Borough has an official policy or custom to stop use of sound equipment in election campaigns. Finally, defendants note that plaintiffs have instituted a state court action against them, and suggest that I abstain and permit this matter to proceed in state court.

Plaintiffs deny that their complaint is based on § 1983. They characterize this action as one for declaratory and injunctive relief, damages and attorneys' fees to protect rights established by the fourteenth amendment. Plaintiffs concede that the Darby Police Department is not a proper defendant. They continue to press their claims against the remaining defendants, claiming that the mayor is not shielded by

immunity in this case and that the Borough of Darby is liable because a Borough ordinance was used to violate plaintiffs' rights.

## II. *Discussion*

### A. *§ 1983*

 Defendants contend that this action should be treated as one brought under 42 U.S.C. § 1983. I agree. The Third Circuit has held that adjudication of direct constitutional claims need not be permitted where plaintiffs have an effective remedy under § 1983. *Rogin v. Bensalem Township,* 616 F.2d 680, 686–87 (3d Cir.1980), *cert. denied,* 450 U.S. 1029, 101 S.Ct. 1737, 68 L.Ed.2d 223 (1981).

According to the United States Supreme Court:

> Allegations of fact sufficient to show deprivation of the right of free speech under the First Amendment are sufficient to establish deprivation of a constitutional right guaranteed by the Fourteenth, and to state a cause of action under the Civil Rights Act, whenever it appears that the abridgment of the right is effected under color of a state statute or ordinance.

*Douglas v. City of Jeannette,* 319 U.S. 157, 162, 63 S.Ct. 877, 880, 87 L.Ed. 1324 (1943). The "under color of law" requirement of § 1983 is satisfied in this case by plaintiffs' allegations that Mayor Saraullo used his official authority to violate their constitutional rights. *See, e.g., Thomas v. Sams,* 741 F.2d 783 (5th Cir.1984), *cert. denied,* — U.S. ——, 105 S.Ct. 3476, 87 L.Ed.2d 612 (1985); *Mines v. Kahle,* 557 F.Supp. 1030, 1033–34 (W.D.Pa.1983). Plaintiffs can obtain declaratory and injunctive relief as well as damages in a § 1983 action. There is thus no need to permit an action directly under the first and fourteenth amendments. *See DiGiovanni v. City of Philadelphia,* 531 F.Supp. 141, 144 (E.D. Pa.1982).

### B. *Claims Against the Police Department*

Plaintiffs concede that the Police Department of the Borough of Darby cannot be named as a defendant in this case. I will therefore grant defendants' motion for summary judgment in favor of the Police Department.

### C. *Claims Against Mayor Saraullo*

Mayor Saraullo contends that he should not be held liable because he acted in good faith, pursuant to municipal and state laws regulating sound equipment. His purpose was allegedly to stop excessive noise, not to prevent plaintiffs from using sound equipment in a political campaign. Defendants state that the Borough generally permits use of sound equipment if the users agree to keep the volume at a reasonable level. The mayor accordingly gave plaintiffs permission to use their equipment, and sent police to investigate only when he received complaints of excessive noise.

Darby police officers involved in the incident have testified that the mayor directed them to ask plaintiffs to reduce the volume. If plaintiffs refused, the police were to bring them to the police station and attempt to resolve the problem through informal discussion. The officers state that they complied with the mayor's instructions. Plaintiffs were brought to the station as a matter of convenience and were not placed under arrest. (Depositions of Lieutenant Robert F. Smythe and Officer Dominic Squillace.)

Plaintiffs, in opposing defendants' motion for summary judgment,[1] deny that there is a Borough ordinance regulating the use of sound equipment in a political campaign. According to the affidavit of Edward Harkin and the depositions of Harkin, Dudash and Lacey, plaintiffs were nevertheless arrested and threatened with future arrests for using sound equipment. Plaintiffs contend that the mayor used his

---

**1.** Plaintiffs, apparently misconstruing the nature of the mayor's defense, contend that he is liable as a supervisor because he knew of and participated in the violation of their rights. The mayor has not denied that he was involved in the relevant events. Supervisory liability is therefore not an issue. Plaintiffs' submissions as a whole, however, do contain certain allegations relevant to the mayor's defense. Those allegations are set forth in this paragraph.

official authority to prevent them from campaigning effectively for a candidate he opposed.

In a case similar to this one, the Third Circuit held that the question of whether individual officials are entitled to summary judgment has two distinct aspects. *Losch v. Borough of Parkesburg*, 736 F.2d 903, 907 (3d Cir.1984). First, where a plaintiff claims to have been arrested unlawfully, an official can invoke good faith and probable cause as a defense on the merits. An official who reasonably determines that the plaintiff violated a statute has probable cause to arrest, and an arrest based on probable cause is not unlawful even if plaintiff was incidentally exercising first amendment rights. *See id.* at 907–09; *United States v. Occhino*, 629 F.2d 561 (8th Cir.1980), *cert. denied*, 450 U.S. 968, 101 S.Ct. 1487, 67 L.Ed.2d 618 (1981). *See also Pierson v. Ray*, 386 U.S. 547, 556–57, 87 S.Ct. 1213, 1218–19, 18 L.Ed.2d 288 (1967). Second, the government official may be shielded by the defense of qualified immunity. *Id.* at 907. The *Losch* court cautioned that these issues must be considered separately.

This demarcation is analytically confusing, especially in light of *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). A different Third Circuit panel, in *Deary v. Three Un-Named Police Officers*, 746 F.2d 185, 192–93 (3d Cir.1984), apparently found *Losch* difficult to comprehend and apply. Nevertheless, the ruling in *Losch* is binding upon me and I will analyze the issues in this case accordingly.

■ With respect to the first issue, the law is clear that use of sound equipment is protected by the first and fourteenth amendments. Although the right to use such equipment is not absolute, it can be regulated only by narrowly drawn, content-neutral ordinances which do not vest undue discretion in government officials. *See,*

*e.g., Kovacs v. Cooper*, 336 U.S. 77, 69 S.Ct. 448, 93 L.Ed. 513 (1949); *Saia v. New York*, 334 U.S. 558, 68 S.Ct. 1148, 92 L.Ed. 1574 (1948); *Beckerman v. City of Tupelo*, 664 F.2d 502 (5th Cir.1981); *United States Labor Party v. Pomerleau*, 557 F.2d 410 (4th Cir.1977); *Phillips v. Township of Darby*, 305 F.Supp. 763 (E.D.Pa.1969); *Chester Branch, N.A.A.C.P. v. City of Chester*, 253 F.Supp. 707 (E.D.Pa.1966). *See also Grayned v. City of Rockford*, 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972).

■ Under the standards set forth in these cases, Darby Ordinance § 106–11 cannot be used to regulate plaintiffs' use of sound equipment. First, I have serious doubts as to whether the ordinance even applies to plaintiffs. As plaintiffs note, the ordinance deals only with peddlers, prohibiting them from hawking or crying their wares and from using loudspeakers which annoy the public.[2] The ordinance refers to persons licensed as peddlers; it does not establish a permit system for the use of sound equipment. Neither does it appear to provide a basis upon which participants in an election campaign can be prevented from using sound equipment. *See Massachusetts Fair Share, Inc. v. Town of Rockland*, 610 F.Supp. 682, 690 (D.Mass.1985) (ordinance restricting the hours in which peddlers can solicit orders for the sale of goods cannot be applied to noncommercial solicitation); *Evans v. Fullard*, 444 F.Supp. 1334 (W.D.Pa.1978).

If the ordinance does apply to all uses of sound equipment, it is open to challenge on constitutional grounds. Although I express no opinion as to whether the ordinance is constitutional if limited to commercial uses of sound equipment, it is too imprecise to be a valid means of regulating activities such as the plaintiffs'. The first amendment "has its fullest and most urgent application precisely to the conduct of campaigns for political office." *CBS, Inc.*

---

2. The ordinance provides:
 *Hawking and crying prohibited*
 No person licensed as a peddler under this Article shall hawk or cry his wares upon any

of the streets or sidewalks of the borough, nor shall he use any loudspeaker or horn or any other device for announcing his presence by which the public is annoyed.

*v. Federal Communications Commission,* 453 U.S. 367, 396, 101 S.Ct. 2813, 2830, 69 L.Ed.2d 706 (1981) (quoting *Monitor Patriot Co. v. Roy,* 401 U.S. 265, 272, 91 S.Ct. 621, 625, 28 L.Ed.2d 35 (1971)). Such fundamental rights cannot be restrained on the basis of an ordinance which contains no explicit standards for enforcement. As the Supreme Court has stated:

Any abuses which loud-speakers create can be controlled by narrowly drawn statutes. When a city allows an official to ban them in his uncontrolled discretion, it sanctions a device for suppression of free communication of ideas. In this case a permit is denied because some persons were said to have found the sound annoying. In the next one a permit may be denied because some people find the ideas annoying. Annoyance at ideas can be cloaked in annoyance at sound. The power of censorship inherent in this type of ordinance reveals its vice.

*Saia,* 334 U.S. at 562, 68 S.Ct. at 1150. Plaintiffs are entitled to argue at trial that no reasonable official would have concluded that he could control plaintiffs' use of sound equipment under § 106–11.

It does not follow, however, that plaintiffs' use of sound equipment cannot be restrained at all. The mayor has also invoked Pennsylvania's disorderly conduct statute, 18 Pa.C.S.A. § 5503, which prohibits the intentional or reckless creation of unreasonable noise. The Pennsylvania Supreme Court has construed the statute narrowly and upheld it as constitutional. *Commonwealth v. Mastrangelo,* 489 Pa. 254, 414 A.2d 54, *appeal dismissed,* 449 U.S. 894, 101 S.Ct. 259, 66 L.Ed.2d 124 (1980). *See also Heard v. Rizzo,* 281 F.Supp. 720, 741 (E.D.Pa.) (upholding a predecessor of Pennsylvania's present disorderly conduct statute), *aff'd per curiam,* 392 U.S. 646, 88 S.Ct. 2307, 20 L.Ed.2d 1358 (1968). According to the supreme court, the statute proscribes "unlawful behavior which in and of itself disturbs the public order and tranquility." *Mastrangelo,* 489 Pa. at 261, 414 A.2d at 58 (quoting Comment, *Public Disorder Offenses Under Pennsylvania's New Crimes Code,* 78 Dick.L.Rev. 15, 30 (1973)). The statute "may not be used to punish anyone exercising a protected First Amendment right." *Id.*

The fact that plaintiffs were using sound equipment in the exercise of first amendment rights, however, is not in itself dispositive. "[C]onduct which constitutes a breach of the peace is not immune from state regulation simply because it occurs in connection with first amendment activity." *Milwaukee Mobilization for Survival v. Milwaukee County Park Commission,* 477 F.Supp. 1210, 1219 (E.D.Wis.1979). *See also Adderley v. Florida,* 385 U.S. 39, 44, 48, 87 S.Ct. 242, 245, 247, 17 L.Ed.2d 149 (1966); *Cox v. Louisiana,* 379 U.S. 559, 574, 85 S.Ct. 476, 485, 13 L.Ed.2d 487 (1965). In *Mastrangelo* itself, the person challenging the statute was convicted of disorderly conduct in effect because of the manner in which he expressed his opinion. The court held that the shouting of epithets at a meter maid did not constitute the exercise of a constitutional right. *Mastrangelo,* 489 Pa. at 262, 414 A.2d at 58.

Similarly, if plaintiffs were intentionally or recklessly making unreasonable noise, their use of sound equipment could be restrained under the disorderly conduct statute even though they were exercising first amendment rights. *Commonwealth v. Weiner,* 230 Pa.Super.Ct. 245, 247–50, 326 A.2d 896, 897–98 (1974).

Even if plaintiffs did not in fact violate the disorderly conduct statute, the mayor is not necessarily liable for any infringement of their constitutional rights. If, as the mayor claims, he reasonably believed plaintiffs were broadcasting at an excessively high volume, he was entitled to have police investigate. He claims he hoped to reach a reasonable accommodation and sent police to discuss the problem, not to arrest plaintiffs for using sound equipment. Even an arrest, however, would have been justified if police had probable cause to believe plaintiffs were violating the disorderly conduct statute. *See Losch,* 736 F.2d at 907–

09; *Weiner*, 230 Pa.Super.Ct. at 247–50, 326 A.2d at 897–98.

Plaintiffs, however, have submitted evidence contradicting defendants' version of the facts. The mayor is thus not entitled to summary judgment with respect to the merits of plaintiffs' claims. Plaintiffs may attempt to prove at trial that they were peacefully exercising their first amendment rights and that the mayor used his official position to prevent them from doing so. *Losch*, 736 F.2d at 908–09.

 Mayor Saraullo has also invoked the defense of qualified immunity, under which "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). The inquiry is an objective one; a defendant's subjective state of mind is not relevant. *Id.* at 815–19, 102 S.Ct. at 2736–39. The defendant has the burden of pleading and proving qualified immunity. *Id.* at 815, 102 S.Ct. at 2736.

In *Losch*, the Third Circuit interpreted *Harlow* to require that courts "look not to the clarity of the *violation* allegedly perpetrated, but at the clarity of the *law* at issue." *Klitzman, Klitzman & Gallagher v. Krut*, 591 F.Supp. 258, 265 (D.N.J.) (interpreting *Losch* ), *aff'd*, 744 F.2d 955 (3d Cir.1984). The plaintiff in *Losch* claimed defendants had brought criminal charges against him in retaliation for his exercise of first amendment rights. Defendants invoked the defense of qualified immunity. The Third Circuit held that the sole inquiry relevant to the qualified immunity issue was "whether Losch had clearly established rights to petition the government in the manner that he did and to be free of malicious prosecution for that exercise." *Losch*, 736 F.2d at 910. Because the law is clear that a citizen may not be penalized for exercising first amendment rights nor arrested without probable cause, the court

rejected defendants' claim to qualified immunity. According to the court, the question of whether defendants acted reasonably and in good faith in filing charges against plaintiff pertained only to their defense on the merits of plaintiff's § 1983 claim, not to the issue of qualified immunity. *Id.*

 Under the circumscribed analysis mandated by *Losch*, Mayor Saraullo is not shielded by the qualified immunity defense. As the *Losch* court held, the law protecting citizens from an official's use of his position to "launch a private vendetta" or to penalize the exercise of constitutional rights is clearly established. *Id.* In determining whether the mayor is entitled to qualified immunity I cannot, according to the Third Circuit, consider whether he could reasonably have believed that his actions did not violate plaintiffs' rights. *Id.*

The mayor's motion for summary judgment must therefore be denied.

### D. *Claims Against the Borough*

The Borough of Darby seeks summary judgment on the ground that plaintiffs have not shown their rights were infringed pursuant to an official policy or custom. According to the Supreme Court, "a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. Department of Social Services*, 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978). "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* at 694, 98 S.Ct. at 2037.

 Plaintiffs allege that the Borough is liable because defendants used Darby Ordinance § 106–11 to infringe their rights. Plaintiffs are correct that a municipality can be sued for actions implementing a municipal ordinance. *Id.* at 690, 98 S.Ct. at 2035. As noted earlier in this opinion, however, it is questionable whether § 106–11 could reasonably be applied to plaintiffs'

use of sound equipment. If an ordinance is manifestly inapplicable, the mere fact that officials cite the ordinance in support of their actions should not be a sufficient ground for imposing liability on the municipality. *See Bennett v. City of Slidell*, 728 F.2d 762 (5th Cir.1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 3476, 87 L.Ed.2d 612 (1985).

■ In this case, however, the ordinance is not the only possible basis for municipal liability. A municipality is also liable for the acts of an official "whose edicts or acts may fairly be said to represent official policy." *Monell*, 436 U.S. at 694, 98 S.Ct. at 2037. Mayor Saraullo is such an official. As our court of appeals has stated, "the Mayor of a Pennsylvania borough is its chief law enforcement officer." *Commonwealth of Pennsylvania v. Porter*, 659 F.2d 306, 310 (3d Cir.1981), *cert. denied*, 458 U.S. 1121, 102 S.Ct. 3509, 73 L.Ed.2d 1383 (1982). As such, he is responsible to "preserve order in the borough, [and] to enforce the ordinances." 53 P.S. § 46029(1). He has "full charge and control of the chief of police and the police force, and he shall direct the time during which, the place where and the manner in which, the chief of police and the police force shall perform their duties." *Id.* § 46121. *See also* Deposition of Louis Saraullo at 4.

■ The mayor had the final authority to determine whether and to what extent plaintiffs would be permitted to use sound equipment in the Borough of Darby. He also had the power to direct how police would deal with plaintiffs' activities. The Borough is therefore liable for any violation of plaintiffs' constitutional rights which may have resulted from the mayor's exercise of his authority. *See, e.g., McKinley v. City of Eloy*, 705 F.2d 1110, 1116–17 (9th Cir.1983); *Berdin v. Duggan*, 701 F.2d 909, 913–14 (11th Cir.), *cert. denied*, 464 U.S. 893, 104 S.Ct. 239, 78 L.Ed.2d 230 (1983); *Black v. Stephens*, 662 F.2d 181, 191 (3d Cir.1981), *cert. denied*, 455 U.S. 1008, 102 S.Ct. 1646, 71 L.Ed.2d 876 (1982).

■ I recognize that the Third Circuit has held that a municipal "policy cannot ordinarily be inferred from a single instance of illegality." *Losch v. Borough of Parkesburg*, 736 F.2d 903, 911 (3d Cir. 1984). In *Losch*, however, the challenged decision was made by the chief of police, who cannot be said to act for the municipality in the sense that the mayor does. *See Languirand v. Hayden*, 717 F.2d 220, 227 (5th Cir.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 2656, 81 L.Ed.2d 363 (1984). The official acts of the mayor, as the ultimate executive authority in the Borough, in themselves represent municipal policy. *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 448 (2d Cir.1980). The Borough is responsible for the consequences of those acts. Because there is a genuine issue of fact as to whether plaintiffs' rights were violated, the Borough is not entitled to summary judgment.

### E. *Abstention*

■ Defendants have suggested that I abstain from adjudicating this matter. Defendants' memorandum of law does not discuss the basis for their suggestion, and I will reject it. The only form of abstention relevant to this case is that set forth in *Railroad Commission of Texas v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). *Pullman* abstention "may be invoked where there is an unsettled question of state law, the resolution of which would affect the decision of a federal constitutional issue, either by obviating the need to decide it or by changing the light in which it must be viewed." *Heritage Farms, Inc. v. Solebury Township*, 671 F.2d 743, 746 (3d Cir.), *cert. denied*, 456 U.S. 990, 102 S.Ct. 2270, 73 L.Ed.2d 1285 (1982).

■ The "unsettled question of state law" in this case is whether Darby Ordinance § 106–11 applies to plaintiffs' conduct. In my view, however, the question is not open to much dispute. The ordinance is clearly designed to regulate commercial use of sound equipment, not the type of political activities in which plaintiffs were engaged. Even if the ordinance applies, significant constitutional questions remain

to be decided. The benefits of abstention in this case are dubious at best. *See Black United Fund of New Jersey v. Kean,* 593 F.Supp. 1567, 1571 (D.N.J.1984), *rev'd on other grounds,* 763 F.2d 156 (3d Cir.1985). On the other hand, the costs of abstention can be especially significant in a case involving first amendment rights. *See id.* (citing *Baggett v. Bullitt,* 377 U.S. 360, 379, 84 S.Ct. 1316, 1326, 12 L.Ed.2d 377 (1964); *Procunier v. Martinez,* 416 U.S. 396, 404, 94 S.Ct. 1800, 1807, 40 L.Ed.2d 224 (1974)). I conclude that abstention is not appropriate in this case.

### Conclusion

Summary judgment will be entered in favor of the Darby Police Department, which plaintiffs concede is not an entity subject to suit. As to the remaining defendants, there are genuine issues of material fact to be resolved at trial. Their motions for summary judgment will therefore be denied.