**BLACK UNITED FUND OF NEW JERSEY, INC., a Non-Profit New Jersey Corporation, Appellee,**

v.

**Thomas H. KEAN, Governor of the State of New Jersey, Appellant.**

**No. 85–5176.**

United States Court of Appeals, Third Circuit.

Argued April 30, 1985.

Decided May 24, 1985.

Joseph L. Yannotti (argued), Andrea Silkowitz, Deputy Attys. Gen., Irwin I. Kimmelman, Atty. Gen. State of N.J., Newark, N.J., for appellant.

Dwayne C. Vaughn (argued), Newark, N.J., for appellee.

Before SEITZ, WEIS and ROSENN, Circuit Judges.

## OPINION OF THE COURT

WEIS, Circuit Judge.

Since 1955, a New Jersey statute has permitted voluntary contributions to the United Way and its predecessors to be deducted from the salaries of state and local governmental employees. Concluding that the state impermissibly excluded other charitable organizations, such as plaintiff Black United Fund, the district court directed that plaintiff be given immediate access to the solicitation and withholding process. One month later a new Act came into effect repealing the 1955 statute and substantially enlarging the criteria for participation by charitable groups in the campaigning and withholding procedures. Because the new legislation altered the basis on which the district court acted, we reverse the grant of the preliminary injunction.

After its requests for gubernatorial permission to solicit charitable contributions from state employees under the 1955 statute were denied, plaintiff resorted to the United States District Court. Its complaint alleged that the provision allowing payroll deductions for the United Way was unconstitutional and asked for injunctive relief.

The district court agreed that the 1955 statute was unconstitutional and, on October 4, 1984, issued a preliminary injunction

barring solicitation of state employees. The order granting relief, however, was stayed to give the state an opportunity to adopt new legislation.

On March 14, 1985, the district court issued another preliminary injunction, but this time it directed the defendant to grant plaintiff the same access to state facilities as was accorded the United Way. We directed a stay of the March order pending an expedited appeal. On April 12, 1985, the governor signed a bill which enlarged eligibility for participation in the solicitation of state employees and repealed the predecessor 1955 statute.

The 1955 statute, N.J.Stat.Ann. 52:14-15.9c, authorizes the state treasurer to deduct from wages of state employees voluntary contributions to United Way.[1] The legislation listed "United Fund, Community Chest, or United Appeals" as charitable organizations entitled to participate in the withholding process. When those groups became absorbed into the United Way, that organization was treated as the sole beneficiary of the statute.

To implement the legislation, successive governors arranged an annual fund-raising campaign.[2] On those occasions, presentations were made to the state employees for the purpose of obtaining authorizations to withhold an amount from their salaries as pledges. The state treasurer would then transmit the funds to the United Way.

The process was a highly cost effective fund-raising activity for the charity, yielding over $500,000 annually to various chapters of the United Way. Not unexpectedly, other charitable groups sought to participate in both the solicitation campaign and the withholding mechanism. After receiving an opinion from the state Attorney General, the defendant governor concluded that the statutory authorization was limited to the United Way and that amendatory legislation was needed before eligibility could be broadened.

Beginning in early 1983, the governor's office held a series of meetings with charitable groups to formulate suggested legislation. In March 1984, a draft of a proposed statute was distributed to the interested charities. Its general tenor was acceptable to a number of the organizations, including the New Jersey Health Agencies, the United Negro College Fund, and the Delaware United Fund, but was rejected by plaintiff in May 1984.

On August 17, 1984, plaintiff again asked to be included in the state-wide campaign, particularly the one in 1984. When no approval was received, plaintiff filed its complaint. The district court conducted a hearing on September 10, 1984, the day before the campaign was scheduled to begin.

On October 3, 1984, the district court issued an opinion holding the 1955 statute unconstitutional.[3] The court recognized that "the state has no constitutional obligation to grant charitable solicitors access to its offices and payrolls in the first instance." In extending a right of access to the United Way, however, the state had arguably created a "limited public forum." The district court found it unnecessary to resolve the question of whether the annual campaign was a limited or nonpublic forum because, in its view, the restrictions on access failed "to meet even the minimal

---

1. The 1955 statute reads in pertinent part:

"Whenever any person holding public office, position or employment, ... shall indicate in writing to the proper disbursing officer his desire to have any deductions made from his compensation for the payment of contributions to a United Fund, Community Chest or United Appeals, such deductions shall be made by the State Treasurer in his discretion ... and shall be transmitted to ... such fund, chest or appeals, ... but any such written authorization may be withdrawn at any time upon filing notice of such withdrawal with the State Treasurer...."

2. The 1955 statute made no reference to campaigns or the use of state employee time and effort in soliciting contributions. The parties apparently do not dispute the governor's interpretation of the statute as permitting such activity. The new Act, however, provides detailed provisions for campaigns.

3. Black United Fund of New Jersey, Inc. v. Kean, 593 F.Supp. 1567 (D.N.J.1984).

requirements of reasonableness which govern access to a nonpublic forum." The court held that the state could not reasonably extend the privilege to the United Way yet exclude other charitable entities in the absence of some even-handed criteria. In that sense, a First Amendment violation was said to exist.

The court also found that the statute violated the equal protection clause by granting benefits to the United Way while denying them to plaintiff. The court observed that the state did not show a rational basis justifying the perpetuation of a legislative decision favoring the United Way reached 30 years earlier when plaintiff had not yet come into existence.

Noting other constitutional infirmities as well, the court enjoined the governor "from conducting or permitting any solicitation of state employees pursuant to N.J.Stat.Ann. 52:14–15.9c or otherwise enforcing or acting upon" the statute. Despite its conclusion that the 1955 statute was unconstitutional, the court did not want to interfere with the campaign then in progress and accordingly stayed the injunction for 45 days to give the state time to draft new legislation. The stay was later extended to December 31, 1984.

Because no legislation had been enacted by that time, at a hearing on January 10, 1985, plaintiff asked the court to stop all payroll deductions. The court again declined the request, stating that it did not wish to injure the United Way which depended on receiving its pledges from state employees. As an alternative, the court commented that it would make available to plaintiff, and any other charitable organizations that asked, the same privileges as the United Way.

Counsel were unable to agree on a form of order, and after settlement negotiations proved fruitless, on February 18, 1985, plaintiff renewed its demand that the state cease the payroll deductions. On March 14, 1985, the court ordered the governor to provide access to the state offices and payroll deductions "equivalent in all respects

to that which has been afforded the United Way since September 1984."

Approximately one month later, on April 12, 1985, the governor signed the "Public Employee Charitable Fund-Raising Act." [4] It repealed and replaced the predecessor statute, effective immediately. The new Act allows for voluntary payroll deductions for charitable organizations which meet specified eligibility standards. An annual fund-raising campaign is to be conducted under the direction of a steering committee composed in part of representatives from each of the participating charities. In addition, the state treasurer was directed to adopt rules and regulations within 90 days to implement the provisions of the Act.

On appeal, defendant contends that the district court erred in its conclusion that the 1955 statute was unconstitutional and, alternatively, the court lacked authority to grant plaintiff access to the state facilities through a mandatory preliminary injunction. Plaintiff argues that the district court acted within its discretion in issuing the injunction.

After argument we solicited comments from counsel on whether this court has the power to pass on the constitutionality of the repealed 1955 statute. Defendant responded that because the mandatory injunction is presently in effect, the constitutionality of the old statute remains an issue and therefore the matter is not moot. Plaintiff, on the other hand, contends that "the constitutionality of a repealed statute squarely fits within the mootness doctrine." Nevertheless, plaintiff argues that we should affirm the district court's injunction.

■ Usually in reviewing appeals from the grant of a preliminary injunction, we employ an abuse of discretion standard. *See Rennie v. Klein*, 653 F.2d 836, 840 (3d Cir.1981); *United States Steel Corp. v. Fraternal Assoc. of Steelhaulers*, 431 F.2d 1046, 1048 (3d Cir.1970). That approach, however, is not appropriate here because

---

4. The new statute, N.J.Stat.Ann. 52:14–15.9c1, is set forth as an Appendix to this opinion.

the condition which led to the district court's action no longer exists. The statute which the court struck down has now been repealed. We therefore are confronted by a legal question—the effect of a change of law which occurs after the entry of an order in the trial court but before appellate review.

The controlling principle was set out in the *United States v. Schooner Peggy*, 5 U.S. (1 Cranch 103) 37, 2 L.Ed. 49 (1801), where Chief Justice Marshall noted that generally an appellate court's function is to inquire whether a judgment was erroneous when rendered. However, "if subsequent to the judgment and before the decision of the appellate court, a law intervenes and positively changes the rule which governs, the law must be obeyed, or its obligation denied." *Id.* at 40. *See also Bradley v. School Board of The City of Richmond*, 416 U.S. 696, 711, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476 (1974).

In *Hall v. Beals*, 396 U.S. 45, 90 S.Ct. 200, 24 L.Ed.2d 214 (1969), the plaintiffs contended that a six month state residency requirement imposed on the right to vote was a violation of the equal protection, due process, and privileges and immunity clauses of the United States Constitution. While the case was on appeal, the state legislature reduced the residency requirement to two months.

The Supreme Court held that the amendment had operated to moot the case. "We review the judgment below in light of the Colorado statute as it now stands, not as it once did." Even though the election had become history, the Court said, "Under the statute as currently written, the appellants could have voted in the 1968 presidential election." 396 U.S. at 48, 90 S.Ct. at 201. The appellants continued to object to a residency requirement of any length, but the Court concluded, "as far as [plaintiffs] are concerned nothing in the Colorado legislative scheme as now written adversely affects either their present interest, or their interest at the time this litigation was commenced." *Id.*

A similar situation was presented in *Diffenderfer v. Central Baptist Church*, 404 U.S. 412, 92 S.Ct. 574, 30 L.Ed.2d 567 (1972). In that case, a tax exemption for church property was modified by a statute enacted after the district court entered a judgment for the church. The Supreme Court stated that it was required to review the action of the district court "in light of Florida law as it now stands, not as it stood when the judgment below was entered." *Id.* at 414, 92 S.Ct. at 575. Declaratory relief, said the Court, was "inappropriate now that the statute has been repealed." *Id.* at 415, 92 S.Ct. at 576. *See also Hamm v. Rock Hill*, 379 U.S. 306, 85 S.Ct. 384, 13 L.Ed.2d 300 (1964) (repeal of criminal statute pending appeal requires conviction be abated); *United States v. Alabama*, 362 U.S. 602, 80 S.Ct. 924, 4 L.Ed.2d 982 (1960) (civil rights action against state reinstated after passage of the Civil Rights Act of 1960); *Hines v. Davidowitz*, 312 U.S. 52, 60, 61 S.Ct. 399, 85 L.Ed. 581 (1941).

Defendant also contends that the case is not moot because plaintiff has included a claim for damages in its complaint. However, the defendant has raised the bar of the Eleventh Amendment and it is questionable that plaintiff will prevail on a damage claim in the federal courts against the defendant in his capacity as Governor of the State. *See Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). In any event, the question of damages is not before us at this time and does not affect the prospective relief presented for review.

We conclude, therefore, that the repeal of the 1955 statute and the enactment of new legislation make it inappropriate for us to affirm the district court's order based on alleged deficiencies in the old Act. The raison d'etre for the injunction no longer exists.

Moreover, we note that the new Act has enlarged the group of charitable organizations which may have access to state facilities and establishes criteria which govern eligibility. The legislation thus meets at least two of the objections cited by the

district court—the exclusivity granted the United Way and the lack of standards for determining which other groups may participate. Presumably, plaintiff will qualify as a "charitable fund-raising organization," and will be eligible to participate in the campaign later this year. To that extent, the new Act will give plaintiff substantially the relief it sought in the district court.

Plaintiff, however, argues that the district court's decree enables it to participate in a special campaign within the next few months. Thus, it would have the opportunity, denied it in 1984, to solicit contributions from state employees and also to have the pledged amount deducted during the balance of 1985. In essence plaintiff contends that absent an affirmance it would be denied a benefit to which it is entitled.

The validity of plaintiff's contention depends on the correctness of the district court's finding of unconstitutionality as well as the appropriateness of the relief ultimately decreed. We do not decide the underlying issues, but observe that the plaintiff's right to that benefit is not that clear.

The issuance of a mandatory preliminary injunction particularly in a situation like the one at hand is subject to question. As Justice Harlan observed in *Welsh v. United States*, 398 U.S. 333, 361, 90 S.Ct. 1792, 1807, 26 L.Ed.2d 308 (1970) (Harlan, J. *concurring*), where a statute is defective because of underinclusion, there are two forms of remedy: "a court may either declare [the statute] a nullity and order that its benefits not extend to the class that the legislature intended to benefit, or it may extend the coverage of the statute to include those who are aggrieved by exclusion."

The federal courts have applied the extension, rather than nullification, remedy in cases where federal benefits were at stake

and the legislative history suggested that such action would be in conformity with congressional intent. *Califano v. Westcott*, 443 U.S. 76, 89, 99 S.Ct. 2655, 2663, 61 L.Ed.2d 382 (1979). However, federal courts have a more limited discretion when confronted with state statutes and particularly when left in doubt as to legislative policy. We note the complete absence of any evidence in this record of the intent of the New Jersey legislature in enacting the 1955 statute. *See Michael M. v. Sonoma County Superior Court*, 450 U.S. 464, 101 S.Ct. 1200, 67 L.Ed.2d 437 (1981). *See also Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. 456, 101 S.Ct. 715, 66 L.Ed.2d 659 (1981).

Even assuming *arguendo* the unconstitutionality of the 1955 statute and the appropriateness of extension rather than nullification, we conclude that the mandatory injunction should not be affirmed.[5]

Without the injunction, plaintiff says it would be "irreparably harmed and forever lose the contributions which it might have received if it had its own version of the 1984 Annual Campaign." To the extent that the plaintiff's allegation of irreparable injury is based on a loss of contributions because of inability to participate in the 1984 campaign the matter is subject to inquiry. The loss, while perhaps not capable of precise measurement, is not unlike other claims for monetary damages. It is a familiar principle of equity that injury compensable by damages does not constitute the irreparable harm prerequisite of a preliminary injunction.

That the Eleventh Amendment may pose an obstacle to recovery of damages in the federal court does not transform money loss into irreparable injury for equitable purposes. It is worth noting, parenthetically, that the Eleventh Amendment would not bar a 1983 suit for damages against defendant in state court.

---

**5.** There is some indication that before the mandatory injunction was issued in March, the district court became aware that the new legislation had passed both the New Jersey House and Senate. In that circumstance, there is some

doubt whether the court should have acted. As we said in *Murillo v. Bambrick*, 681 F.2d 898, 912 (3d Cir.1982), where the legislature "has proceeded with promptness, judicial intervention is neither necessary nor appropriate."

Moreover, it appears that the consolidated campaign under the new Act will likely be scheduled for September of this year and that plaintiff will be a participant. Hence, there are but a few months remaining before the annual campaign. To permit plaintiff to conduct a special solicitation in addition to the regular one would impose substantial burdens on the state and its employees.

A weighing of all the factors including the extra expense to the state and the additional disruption of its employees' work caused by two campaigns, following closely on the heels of one another, counsels against affirming the relief granted by the district court.

We emphasize once again that because of a change in circumstances brought about by the repeal of the 1955 statute, we do not use the abuse of discretion standard of review. The new ameliorative legislation is a factor which was not present at the time the district court determined that a mandatory injunction was an appropriate remedy. Moreover, the plaintiff's likelihood of prevailing on the grant of a preliminary injunction, while considered by the district court in its October 1984 order barring any solicitation, was never taken into account when accessing the necessity of the mandatory relief granted in March.

In light of all the circumstances, therefore, we conclude that the mandatory preliminary injunction of the district court should be reversed and the case remanded for further proceedings.

APPENDIX TO OPINION OF
THE COURT

ASSEMBLY, NO. 3314

STATE OF NEW JERSEY

INTRODUCED FEBRUARY 25, 1985

By Assemblymen CHARLES,
WEIDEL and DORIA

An Act concerning charitable fund-raising among public employees and repealing P.L.1955, c. 163.

Be It Enacted *by the Senate and General Assembly of the State of New Jersey:*

1. This act shall be known and may be cited as the "Public Employee Charitable Fund-Raising Act."

2. The Legislature finds that:

a. It is the policy of the State to lessen the burden of government at both the State and local level in meeting the needs of human health, welfare and human care services;

b. There is a need to provide a convenient channel through which public employees may support the efforts of charitable fund-raising organizations and charitable agencies while minimizing disruption to the workplace and cost to taxpayers that fund-raising may entail; and

c. It is necessary to establish a system for the planning and conduct of charitable fund-raising campaigns among public employees in order to ensure that the funds will be collected and distributed in a responsible manner.

3. As used in this act:

a. "Affiliated charitable agency" means a charitable agency which is affiliated with a charitable fund-raising organization for the purpose of directly sharing in funds raised by the organization.

b. "Campaign manager" means a charitable fund-raising organization which manages a charitable fund raising campaign.

c. "Charitable agency" means a volunteer, not-for-profit organization that provides health, welfare or human care services to individuals.

d. "Charitable fund-raising campaign" means an annual payroll deduction campaign organized pursuant to this act to receive and distribute the voluntary charitable contributions of public employees.

e. "Charitable fund-raising organization" means a voluntary not-for-profit organization which receives and distributes voluntary charitable contributions.

f. "Local unit of government" means any county, municipality, board of education or instrumentality thereof.

g. "State" means the State or any instrumentality thereof.

h. "Unaffiliated charitable agency" means a charitable agency which provides health, welfare or human care services within New Jersey and which is not affiliated with a charitable fund-raising organization.

i. "Undesignated contributions" means funds contributed to a charitable fund-raising campaign with no designation by the contributor as to the recipient charitable fund-raising organization or charitable agency.

4. a. There is established a State charitable fund-raising campaign steering committee to consist of one representative to be appointed by each charitable fund-raising organization which participates in the State campaign; one representative of a State public employee labor union to be selected jointly by the presidents of the various labor unions representing State employees; and one representative of the executive branch of State government to be appointed and serve at the pleasure of the Governor. The committee shall convene annually at the call of the State Treasurer to elect a chairman from among its members, and shall thereafter convene at the call of the chairman. A chairman shall serve for a term of one-year and until the election of a successor and shall be eligible for reelection. Each member of the committee shall have one vote. No motion to take any official action shall be deemed approved if objected to by at least five members.

b. There is established in every local unit of government a local charitable fund-raising campaign steering committee to consist of one representative to be appointed by each charitable fund-raising organization which participates in the local campaign, and one representative of the local unit of government to be appointed by the chief executive officer of the unit. The committee may also include two represent-atives of the employees or the management of the unit as may be designated by the governing body of the unit. Each committee shall convene annually at the call of the chief executive officer of the unit to elect a chairman from among its members, and shall thereafter convene at the call of the chairman. A chairman shall serve for a term of one year and until the election of a successor and shall be eligible for reelection. Each member of a committee shall have one vote and a vote of the majority of the total membership shall be necessary to take official action.

5. It shall be the duty of each charitable campaign steering committee to:

a. advise the State Treasurer or local disbursing officer in establishing application and review procedures for the participation of charitable fund-raising organizations or charitable agencies in a campaign;

b. establish the policies and procedures for the operation of a charitable fund-raising campaign within the committee's unit of government;

c. designate one or more charitable fund-raising organizations as a campaign manager, taking into account the demonstrated capability of each organization to provide the level of administrative and other services necessary to conduct a campaign for the unit of government; and

d. assign functions to and enlist the cooperation of any charitable fund-raising organizations or charitable agencies as the committee deems necessary.

6. It shall be the duty of a campaign manager to:

a. conduct and manage the charitable fund-raising campaign in a responsible and equitable manner in accordance with the policies and procedures established by the campaign steering committee;

b. produce and distribute campaign materials;

c. train and supervise campaign solicitors; and

d. maintain an accounting of all funds raised and distributed and provide for the distribution of funds in the manner established by the campaign steering committee;

7. A charitable fund-raising organization shall be eligible to participate in a charitable fund-raising campaign if it meets the following requirements:

a. the organization is exempt from federal income tax under section 501(c)(3) of the Internal Revenue Code;

b. the organization qualifies for tax deductible contributions under section 170(b)(1)(a)(vi) or (viii) of the Internal Revenue Code;

c. the organization is not a foundation;

d. the organization is incorporated under or subject to the provisions of Title 15 of the Revised Statutes or Title 15A of the New Jersey Statutes and the "Charitable Fund Raising Act of 1971," P.L.1971, c. 469 (C.45:17A–1 et seq.).

e. the organization demonstrates to the satisfaction of the State Treasurer or the appropriate disbursing officer, as the case may be, that a significant portion of funds raised in each of its two fiscal years preceding its application to participate in a campaign consist of individual contributions from citizens of the state.

f. the organization shall have raised at least $60,000.00 and distributed that sum among at least 15 charitable agencies in each of its two fiscal years preceding its application to participate in a State campaign; and

g. the organization shall have raised at least $25,000.00 and distributed that sum among at least five charitable agencies in each of its two fiscal years preceding its application to participate in a local governmental unit campaign.

8. A charitable agency shall be eligible to participate in a charitable fund-raising campaign if a. it is an affiliated charitable agency or b. it meets the requirements of subsections a. through e., inclusive, of section 7 of this act.

9. The State Treasurer, in the case of the State, or the appropriate disbursing officer, in the case of a local unit of government, shall establish a payroll deduction system for the collection and distribution of voluntary charitable contributions by public employees of the State or unit

pursuant to an annual charitable fund-raising campaign organized in accordance with this act.

10. The State Treasurer or appropriate disbursing officer shall make payroll deductions from an employee's compensation in such amounts and on behalf of such participating charitable fund-raising organizations or charitable agencies as the employee shall authorize in writing to the State Treasurer or disbursing officer. An employee may withdraw an authorization at any time upon written notice to the State Treasurer or appropriate disbursing officer.

11. The State Treasurer and each disbursing office shall promptly transmit the amounts deducted, and an accounting of the amounts designated to the various charitable fund-raising organizations or charitable agencies, to the respective campaign manager, who shall be responsible for final distribution of the amounts to the designated organizations or agencies.

12. a. The campaign manager shall be entitled to deduct and expend prior to final distribution not more than 10% of the total amount of contributors for the administrative costs of the charitable fund-raising campaign as approved by the campaign steering committee. The campaign manager shall maintain all funds in an interest bearing account until their distribution. Interest earned on the funds shall be distributed in such manner as the campaign steering committee shall determine.

b. Undesignated contributions received in a State campaign shall be distributed by the campaign manager to the charitable fund-raising organizations participating in the campaign in the same proportion as designated contributions to participating fund-raising organizations, including contributions to affiliated charitable agencies, are distributed to the organizations.

c. Undesignated contributions received in a local governmental unit campaign shall be distributed by the campaign manager to participating or non-participating charitable fund-raising organizations or charitable agencies in such amounts as the campaign steering committee shall determine.

[redacted]

13. The State Treasurer shall, within 90 days after the effective date of this act and from time to time thereafter, adopt rules and regulations as shall be necessary to implement the provisions of this act in accordance with the "Administrative Procedure Act," P.L.1968, c. 410 (C.52:14B-1 et seq.).

14. P.L.1955, c. 163 (C. 52:14-15.9c) is repealed.

15. This act shall take effect immediately.

STATEMENT

This bill establishes procedures for the conduct of charitable fund-raising campaigns which utilize payroll deductions for public employees at the State and local level. It repeals the existing law governing payroll deduction contributions.