

2001 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-17-2001

# Khodara Env Inc v. Beckman

Precedential or Non-Precedential:

Docket 99-3458, 99-3465 & 99-3475

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2001

Recommended Citation

"Khodara Env Inc v. Beckman" (2001). *2001 Decisions.* Paper 7.
http://digitalcommons.law.villanova.edu/thirdcircuit_2001/7

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2001 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed January 17, 2001

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Nos. 99-3458, 99-3465, 99-3475

KHODARA ENVIRONMENTAL, INC.,
GENERAL PARTNER, ON BEHALF OF EAGLE
ENVIRONMENTAL, L.P.

v.

STEVEN BECKMAN;
FEDERAL AVIATION ADMINISTRATION;
CLEARFIELD-JEFFERSON COUNTIES REGIONAL
AIRPORT AUTHORITY; DONALD R. JOHNSON; P AUL
SEKULA; WILLIAM MIKSICH; FREDERICK G. MURRAY;
TIM MORGAN; ROBERT E. REITZ; HENRY DEIBLE; PAUL
MCMILLEN; MARK MCKINLEY; JANE F. GARVEY

JEFFERSON COUNTY; PINE CREEK TOWNSHIP
(Intervenor-defendants in D.C.)

Federal Aviation Administration,
        Appellant in No. 99-3458

Khodara Environmental, Inc., general partner
acting on behalf of Eagle Environmental, L.P .,
(collectively "Eagle"),
        Appellant in No. 99-3465

Steven Beckman,
        Appellant in No. 99-3475

ON APPEAL FROM THE
UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF PENNSYLVANIA

(Dist. Court No. 97-cv-00093E)
District Court Judge: Sean J. McLaughlin

Argued: February 28, 2000

Before: ALITO and STAPLETON, Cir cuit Judges, and
POLLAK, District Judge.*

(Opinion Filed: January 17, 2001)

DAVID W. OGDEN
Acting Assistant Attorney General
HARRY LITMAN
United States Attorney
MARK B. STERN
SCOTT R. McINTOSH (Argued)
Attorneys, Appellate Staff
Civil Division, Department of Justice
601 D Street N.W., Room 9550
Washington, DC 20530-0001

Counsel for Appellant Federal
Aviation Administration

JOHN P. KRILL, JR. (Argued)
CARLETON O. STROUSS
JACQUELINE JACKSON-DeGARCIA
JULIA M. GLENCER
Kirkpatrick & Lockhart LLP
240 North Third Street
Harrisburg, PA 17101

Counsel for Appellee/Cross-Appellant
Khodara Environmental, Inc.

_____

* The Honorable Louis H. Pollak, Senior Judge of the United States
District Court for the Eastern District of Pennsylvania, sitting by
designation.

PAUL A. TUFANO
General Counsel
THADDEUS A. WEBER (Argued)
Assistant Counsel
Commonwealth of Pennsylvania
Department of Environmental
 Protection
Northwest Regional Counsel
Meadville, PA 16335

Counsel for Appellant/Cross-Appellee
Steven Beckman

THOMAS L. WENGER (Argued)
STEVEN R. WILLIAMS
Wix, Wenger & Williams
508 North Second Street
Harrisburg, PA 17101

Counsel for Appellees Clearfield-
Jefferson Counties Regional Airport
Authority, Donald R. Johnson, Paul
Sekula, William Miksich, Frederick
G. Murray, Tim Morgan, Robert E.
Reitz, Henry Deible, Paul McMillen
and Mark McKinley

OPINION OF THE COURT

ALITO, Circuit Judge:

Eagle Environmental, L.P. ("Eagle"), a landfill developer, brought both facial and as-applied challenges against a federal statute regulating the placement of waste disposal facilities near airports. The District Court struck down the law as facially unconstitutional, holding that it was so irrationally underinclusive as to violate equal pr otection.

While this appeal was pending, Congress r epealed the challenged statute and replaced it with a substantially broader regulatory scheme. We believe that this action has mooted Eagle's claims regarding the old statute's facial constitutionality, and accordingly vacate that portion of the

3

District Court's judgment. As to Eagle's as-applied challenges, we affirm the District Court's grant of summary judgment in favor of the defendants.

I.

A. The Happy Landing Landfill

The pertinent facts of this case are not in dispute. Khodara Environmental, Inc., is the general partner of Eagle, a limited partnership based in Englewood Clif fs, New Jersey. Eagle owns approximately 680 acr es in Jefferson County, Pennsylvania, on which it planned to develop a solid waste disposal facility to be called the Happy Landing Landfill. Happy Landing was intended to accept municipal waste from primarily out-of-state producers. The Happy Landing site is located approximately 5.25 miles from the Dubois-Jefferson County Airport.

In 1990, Eagle began applying for the necessary landfill permits from the Pennsylvania Department of Environmental Protection ("PDEP"). [1] The PDEP initially issued all four of the permits necessary for the construction and operation of Happy Landing. After obtaining these permits, Eagle began pre-construction by conducting engineering surveys and installing monitoring wells.

In September 1996, however, the Pennsylvania Fish and Boat Commission designated three streams near the Happy Landing site as wild trout streams. Based on this designation, the PDEP determined that the landfill site contained wetlands of "exceptional value" and that it consequently should not have issued to Eagle the W ater Obstruction and Encroachment Permit tofill these wetland

_____

1. Under Pennsylvania law, before construction and operation of a landfill may commence, the prospective operator must obtain the necessary permits from the PDEP, including: a permit to authorize the construction and operation of the landfill; a per mit to authorize the discharge of treated industrial waste; a permit to authorize certain air emissions related to the landfill's operation; and, if the proposed construction adversely affects wetlands, a W ater Obstruction and Encroachment Permit.

areas. Accordingly, on September 25, 1996, Steven Beckman, the Regional Director of the Northwest Regional Office of the PDEP, entered an administrative order modifying Eagle's Water Obstruction and Encr oachment Permit by revoking its authorization tofill certain wetland areas. The order also suspended the r emainder of that permit, as well as all of Eagle's other per mits. Eagle appealed the revocation and suspension or der to the Pennsylvania Environmental Hearing Boar d. The Board denied Eagle's appeal, and the Pennsylvania Commonwealth Court, in an Order filed on February 19, 2000, affirmed. See Khodara Envir onmental, L.P. v. Department of Environmental Protection , No. 2704 C.D. 1998 (Pa. Commw. Ct. Feb. 19, 2000). Eagle's appeal of the Commonwealth Court's order is currently pending, and construction of Happy Landing has been suspended until this controversy is resolved.

B. The 1996 Amendment

On October 9, 1996, Congress enacted the Federal Aviation Reauthorization Act of 1996, Pub. L. No. 104-264, 110 Stat. 3213. Section 1220 of the Act (the "1996 Amendment") was drafted by Representatives Bud Schuster and William Clinger--whose Pennsylvania districts encompass Jefferson County and neighboring ar eas--and was inserted into the Act during a conference committee convened to debate an unrelated amendment. The 1996 Amendment provided:

> (a) Landfills: [49 U.S.C.] Section 44718 is amended by adding at the end the following:
>
> (d) Landfills: For the purpose of enhancing aviation safety, in a case in which 2 landfills have been proposed to be constructed or established within 6 miles of a commercial service airport with fewer than 50,000 enplanements per year, no person shall construct or establish either landfill if an official of the Federal Aviation Administration has stated in writing within the 3-year period ending on the date of the enactment that 1 of the landfills would be

5

incompatible with aircraft operations at the airport, unless the landfill is already active on the such date of enactment or the airport operator agrees to the construction or establishment of the landfill.

(b) Civil Penalties: [49 U.S.C.] Section 46301 is amended by inserting 44718(d) after 44716, in each of subsections (a)(1)(A), (d)(2), and (f)(1)(A)(i).

Pub. L. No. 104-264, S 1220(a), 110 Stat. 3213, 3286. Eagle's proposed landfill fell within the statutory criteria. Both Happy Landing and a second proposed waste disposal facility, the Leatherwood Landfill,[2] were located within six miles of the DuBois-Jefferson County Airport, a commercial airport with fewer than 50,000 enplanements per year . Moreover, the FAA had issued a written determination within the preceding three years that the Leatherwood facility would be incompatible with aircraft operations at the Airport.[3] In fact, as the F AA has admitted on appeal,

_____

2. In January 1991, Leatherwood, Inc., submitted a request to the PDEP for permission to operate the Leatherwood Landfill near the Dubois-Jefferson County Airport.

3. Leatherwood's proposed site was located within five miles of the Airport and beneath the approach course of a runway. The FAA concluded that this configuration would significantly increase the risk of an aircraft bird strike and accordingly recommended that the PDEP deny Leatherwood's permit application under a 1990 FAA regulation, which classified the following landfill placements as incompatible with air safety:

a. Waste disposal sites located within 10,000 feet of any runway end used or planned to be used by turbine power ed aircraft.

b. Waste disposal sites located within 5,000 feet of any runway end used only by piston powered aircraft.

c. Any waste disposal site located within a 5 mile radius of a runway end that attracts or sustains hazardous bird movements from feeding, water or roosting ar eas into, or across the runways and/or approach and departure patter ns of aircraft.

(App. 2:196.) Because Happy Landing was located 5.25 miles away from the Airport, however, it was not subject to F AA regulation prior to the passage of the 1996 Amendment.

6

the 1996 Amendment's extremely narrow criteria affected
only Happy Landing, out of all the landfills in the country.4

On October 21, 1996, PDEP Regional Director Beckman
sent a letter to Eagle informing it that the 1996
Amendment "impacts the two proposed landfills in
Jefferson County, Eagle Environmental's Happy Landing
Landfill and Leatherwood, Inc.'s Jefferson Landfill." (App.
1:51.) The letter went on to explain that all of the permits
previously issued for the Leatherwood landfill had been
suspended in light of the new law. The letter further
advised that

> [t]he Department's further action regar ding
> reinstatement and/or modification of Eagle
> Environmental's currently suspended per mits will be
> governed by the same criteria applicable to
> Leatherwood, Inc. Thus, if Eagle seeks reinstatement or
> modification pursuant to the Department's September
> 25th Order, Eagle Environmental should also indicate
> to the Department how it intends to comply with
> Section 1220(a) of the Federal Aviation Reauthorization
> Act of 1996.

(App. 1:51.)

On November 20, 1996, Eagle, acting pursuant to the
new statutory scheme, formally sought per mission from the
Clearfield–Jefferson Counties Regional Airport Authority
(the "Airport Authority")5 to construct and operate the

---

4. The 1996 Amendment's legislative history suggests that it was
intended to single out Happy Landing for regulation. After the Act was
signed into law, Rep. Shuster, the pr ovision's drafter, issued a press
release titled "SHUSTER AUTHORS PROVISION TO PROTECT DUBOIS
JEFFERSON COUNTY AIRPORT FROM LANDFILL," in which he stated
that "[m]y provision allows the local airport authority to stop these
landfills." (App. 3:497–98.) Another newspaper article quoted Rep.
Shuster as stating that the Amendment was enacted to enable the local
Airport Authority to block the landfill and that"[t]here's only one
airport
in the United States that fits [the Amendment's] definition." (App.
3:500.)
Commenting on the possibility of a legal challenge by Eagle, Rep.
Shuster stated that "if they go into court, you could tie them up for
years
and years and years." (App. 3:500.)

5. The Authority is a municipal authority for med under the laws of
Pennsylvania, and is entirely responsible for the operation of the Dubois–

landfill. On November 22, the Authority responded with a letter notifying Eagle that it would accept written documentation supporting Eagle's request for a period of 30 days. The Authority also informed Eagle that it would accept documentation from other interested parties over the same period and that all the submissions it r eceived would be made public. On December 23, 1996, Eagle pr ovided the Authority with 14 exhibits in support of its r equest. At a public meeting held on January 24, 1997, the Authority's Board of Directors unanimously denied Eagle's request.

C. The District Court Litigation

On April 25, 1997, Eagle filed the present action in the United States District Court for the Wester n District of Pennsylvania. Eagle's first three claims, which involved facial constitutional challenges to the 1996 Amendment, were asserted against the FAA, as well as against Barry Valentine (the Acting Administrator of the F AA)6 and Steven Beckman (the Regional Director of the PDEP) in their official capacities.7 Count I of the Complaint alleged that the 1996 Amendment worked an unconstitutional delegation of federal authority to the local airport authority; Count II attacked the Amendment as an unconstitutional bill of attainder; and Count III challenged the law on the ground that it violated Eagle's rights to equal protection and due process under the Fifth and Fourteenth Amendments. Count IV of the Complaint was dir ected

_____

Jefferson County Airport. The Authority, acting through its Board of Directors, is generally responsible for making decisions concerning the administration of the Airport, including operations, airport safety, and capital improvements.

6. On August 4, 1997, Jane F. Garvey was appointed FAA Administrator. Garvey was substituted as a defendant pursuant to Federal Rule of Civil Procedure 25(d)(1).

7. In its Complaint, Eagle originally asserted these claims against the Airport Authority and its directors as well. The District Court, however, held that the Airport Authority defendants wer e not proper parties to Eagle's facial challenges to the 1996 Amendment, and Eagle has not appealed this ruling.

8

against the Airport Authority and its directors [8] in their individual and official capacities. This count asserted that defendants' application of the 1996 Amendment violated Eagle's constitutional rights to equal protection, procedural and substantive due process, and freedom from the taking of property without just compensation. Finally, Count V, which Eagle asserted against all defendants, claimed that the 1996 Amendment did not apply to Happy Landing as a matter of statutory construction. Eagle sought declaratory judgment on all counts, as well as prospective injunctive relief and compensatory and punitive damages. In addition to the previously mentioned parties, the District Court granted Jefferson County and Pine Creek Township permission to participate as intervenors in the case.

On May 16, 1997, defendant Beckman filed a motion to dismiss the case, arguing that Eagle lacked standing and that the case was not ripe. Specifically, Beckman argued that Eagle could not demonstrate any injury arising from the PDEP's letter of October 21, 1996, because, when the letter was issued, Happy Landing's construction had already been forestalled by the suspension of Eagle's state permits. On September 23, 1997, the District Court denied Beckman's motion, holding that a ruling on the constitutionality of the 1996 Amendment would permit Eagle to make an informed decision on whether to expend additional effort to pursue its appeal on the state permits. Moreover, the court held that the PDEP had not foresworn its intention to enforce the 1996 Amendment should Eagle's permits be restored in its state court litigation.

Eagle subsequently filed a motion for partial summary judgment as to Counts I, II, and III of its Complaint--the facial constitutional challenges. The FAA and the intervenors cross-moved for summary judgment on the same counts. The Airport Authority and its Board members moved for summary judgment as to Counts IV and V. Beckman filed a motion in which he renewed his previous arguments concerning standing and ripeness, and further

_____

8. The Airport Authority's directors during the relevant period were Don Johnson, Paul Sekula, William Miksich, Mark McKinley, Frederick Murray, Tim Morgan, Robert Reitz, Henry Deible and Paul McMillen.

argued that he was entitled to summary judgment on the basis of Eleventh Amendment immunity. The intervenors also moved to dismiss on the grounds of mootness and lack of ripeness.

On April 1, 1999, the District Court entered its final judgment and order. See Khodara Environmental, Inc. v. Beckman, 91 F. Supp. 2d 827 (W.D. Pa. 1999). At the outset, the Court rejected the jurisdictional defenses raised by Beckman and the intervenors and held that the 1996 Amendment, as a matter of statutory construction, applied to Happy Landing. Turning to Eagle's constitutional challenges, the Court held that the 1996 Amendment was facially unconstitutional because it violated Eagle's right to equal protection. Although the Court found that the government had a legitimate interest in preventing aircraft bird strikes, it found several aspects of the statute so grossly under- and over-inclusive as to render the statutory classification irrational. In particular, the Court saw no rational justification for the provisions that: (1) limited the ban to cases where exactly two landfills had been proposed; (2) restricted the provision to airports with less than 50,000 annual emplanements; (3) covered only commer cial, and not commuter, airports; and (4) limited the statute to purely retrospective effect. In short, the Court found it irrational to single out the Leatherwood and Happy Landing Landfills for regulation, while permitting the operation of other similarly situated landfills across the country. Because it held the Amendment unconstitutional on equal protection grounds, the Court did not find it necessary to addr ess Eagle's bill of attainder or non-delegation challenges. Finally, the Court granted summary judgment in favor of the Airport Authority and its directors with respect to Eagle's "as applied" constitutional claims (Count IV).

The FAA and Beckman appealed the Court's determination that the 1996 Amendment was facially unconstitutional. Eagle cross-appealed the grant of summary judgment in favor of the Airport Authority defendants on Count IV.

D. The 2000 Amendment

This Court took up the appeals and heard oral argument. After oral argument, but before we had issued a judgment,

10

Congress enacted legislation substantially modifying the 1996 Amendment. On April 5, 2000, the President signed into law the Wendell H. Ford Aviation Investment and Reform Act for the 21st Century, Pub. L. No. 106-181, 114 Stat. 61 (2000). Section 503 of the Act (the "2000 Amendment") amended 49 U.S.C. S 44718(d) to read as follows:

> (d) LIMITATION ON CONSTRUCTION OF LANDFILLS. --
>
> (1) IN GENERAL.--No person shall construct or establish a municipal solid waste landfill (as defined in section 258.2 of title 40, Code of Federal Regulations, as in effect on the date of the enactment of this subsection) that receives putrescible waste (as defined in section 257.3-8 of such title) within 6 miles of a public airport that has received grants under chapter 471 and is primarily served by general aviation aircraft and regularly scheduledflights of aircraft designed for 60 passengers or less unless the State aviation agency of the State in which the airport is located requests that the Administrator of the Federal Aviation Administration exempt the landfill from the application of this subsection and the Administrator determines that such exemption would have no adverse impact on aviation safety.
>
> (2) LIMITATION ON APPLICABILITY .--Paragraph (1) shall not apply in the State of Alaska and shall not apply to the construction, establishment, expansion, or modification of, or to any other activity undertaken with respect to, a municipal solid waste landfill if the construction or establishment of the landfill was commenced on or before the date of the enactment of this subsection.

Pub. L. No. 106-181, S 503, 114 Stat. 61, 133.

The 2000 Amendment significantly broadened the scope of the statute, thus resolving many of the District Court's equal protection concerns. Unlike the challenged law, the new statutory scheme does not work to single out the Happy Landing site for exceptional treatment. In essence, the amended statute creates a purely pr ospective six-mile

11

"safety zone" around all federally-funded (non-Alaskan) airports with regularly scheduled flights of 60 passengers or less. The amended statute also alleviates the non-delegation and separation-of-powers concerns raised by the old law. Before the District Court, Eagle argued that the 1996 Amendment's grant of exemption power to local airport authorities violated Article I's requir ement of unitary executive power. The amended statute, in contrast, grants no statutory power to local authorities. Rather , the final power to make exceptions is granted to the Administrator of the FAA, who is an agent of the federal executive.

In light of the 2000 Amendment, the FAA hasfiled a motion pursuant to Local Appellate Rule 27.4 to vacate the District Court's judgment as moot and remand.

II.

A.

We turn first to the FAA's claim of mootness. Article III of the Constitution grants the federal courts the power to adjudicate only actual, ongoing cases or contr oversies. "This case-or-controversy requir ement subsists through all stages of federal judicial proceedings, trial and appellate." Lewis v. Continental Bank Corp., 494 U.S. 472, 477 (1990); see also U.S. Bancorp Mortgage Co. v. Bonner Mall Partnership, 513 U.S. 18, 21 (1994); Ivy Club v. Edwards, 943 F.2d 270, 275 (3d Cir. 1991). Our mootness determination therefore turns on whether there remains, in light of Congress's action, "a real and substantial controversy admitting of specific relief through a decree of conclusive character." New Rock Asset Partners, L.P. v. Preferred Entity Advancements, Inc. , 101 F.3d 1492, 1496 (3d Cir. 1996) (quoting National Iranian Oil Co. v. Mapco Int'l, Inc., 983 F.2d 485, 489 (3d Cir . 1992)).

We agree that the passage of the 2000 Amendment has mooted Eagle's facial constitutional challenges to the 1996 Amendment. Under the circumstances present here, we must "review the judgment of the district court in light of the [the] law as it now stands, not as it stood when the judgment below was entered." Dif fenderfer v. Central Baptist

12

Church, 404 U.S. 412, 414 (1972); see also Princeton Univ. v. Schmid, 455 U.S. 100, 103 (1982) (per curiam); Naturist Soc'y, Inc. v. Fillyaw, 958 F.2d 1515, 1520 (11th Cir. 1992); Black United Fund of New Jersey, Inc. v. Kean, 763 F.2d 156, 160 (3d Cir. 1985). Black United Fund is instructive. In that case, the plaintiff charity challenged a New Jersey statute permitting the United Way--but not other charitable organizations--to deduct voluntary contributions from the salaries of government workers. The District Court found the statute unconstitutionally discriminatory and enjoined its operation. Pending appeal, the state repealed the challenged law and replaced it with a new statute that permitted voluntary payroll deductions for other charities that met specified criteria. We held that the statutory amendment mooted plaintiff 's claims:

> We conclude, therefore, that the r epeal of the 1955 statute and the enactment of new legislation make it inappropriate for us to affirm the district court's order based on alleged deficiencies in the old Act. The raison d'etre for the injunction no longer exists.

Black United Fund, 763 F.2d at 160. Moreover, we found that the new legislation had substantially r esolved the constitutional questions raised by the predecessor law:

> [W]e note that the new Act has enlarged the group of charitable organizations which may have access to state facilities and establishes criteria which govern eligibility. The legislation thus meets at least two of the objections cited by the district court--the exclusivity granted the United Way and the lack of standards for determining which other groups may participate. . . . To that extent, the new Act will give plaintif f substantially the relief it sought in the district court.

Id. at 160-61.

Similar concerns inform our mootness decision here. The scope of the 2000 Amendment is substantially br oader than that of the challenged law. The restrictive criteria and purely retrospective nature of the old statute--which the District Court found irrationally underinclusive--effectively limited its application only to the Happy Landing and Leatherwood landfills. The new provision, however, applies

13

prospectively to a wide variety of landfills. Accordingly, we believe that the 2000 Amendment is far less susceptible to attack on equal protection or bill-of-attainder grounds. Moreover, the new law places the power to make exemptions in the hands of the FAA rather than the local airport authority, thereby assuaging Eagle's unitary executive concerns.

Simply put, a declaration of unconstitutionality or injunction directed against the objectionable features of the 1996 Amendment would serve no purpose today. "Where a law is amended so as to remove its challenged features, the claim . . . becomes moot as to those features." Naturist Soc'y, 958 F.2d at 1520; see also FW/PBS, Inc. v. City of Dallas, 493 U.S. 215, 234 (1990).

Nor do Eagle's facial challenges fall within any r ecognized exception to the mootness doctrine. In City of Mesquite v. Aladdin's Castle, Inc., 455 U.S. 283, 289 (1982), the Supreme Court held that "a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." Such cases may fall within the mootness exception of injuries that are "capable of repetition, yet evading review." Southern Pacific Terminal Co. v. ICC, 219 U.S. 498, 514 (1911). We do not believe that this cir cumstance is present here, however. As the Fourth Cir cuit has recently noted, "statutory changes that discontinue a challenged practice are `usually enough to render a case moot, even if the legislature possesses the power to reenact the statute after the lawsuit is dismissed.' " Valer o Terrestrial Corp. v. Paige, 211 F.3d 112, 116 (4th Cir. 2000) (quoting Native Village of Noatak v. Blatchford, 38 F.3d 1505, 1510 (9th Cir. 1994)); see also National Black Police Ass'n v. District of Columbia, 108 F.3d 346, 349 (D.C. Cir. 1997) ("the mere power to reenact a challenged law is not a sufficient basis on which a court can conclude that a reasonable expectation of recurrence exists"). In this case,"[w]e have no grounds for suspecting that [Congress] would attempt to reenact the prior law." Thomas v. Fielder, 884 F .2d 990, 995-96 (7th Cir. 1989). Accordingly, we hold that Counts I, II and III of Eagle's Complaint--its facial attacks on the constitutionality of the 1996 Amendment--ar e moot in light

14

of that law's repeal and replacement by the 2000 Amendment.

B.

We next address whether the District Court's holding that the 1996 Amendment was facially unconstitutional is subject to vacatur. Pursuant to 28 U.S.C.S 2106, we have the power to vacate the judgment of a district court on appeal. In arguing for vacatur, the F AA cites cases following United States v. Munsingwear, Inc., 340 U.S. 36, 39 (1950), which held that "[t]he established practice .. . in dealing with a civil case from a court in the federal system which has become moot while on its way here or pending our decision on the merits is to reverse or vacate the judgment below and remand with a direction to dismiss."

The Supreme Court, however, has explained that Munsingwear does not set forth a categorical rule. In U.S. Bancorp Mortgage Co. v. Bonner Mall Partnership, 513 U.S. 18, 23–25 (1994), the Court clarified that vacatur is an equitable remedy rather than an automatic right. See, e.g., National Black Police, 108 F.3d at 346; Humphreys v. Drug Enforcement Administration, 105 F.3d 112, 113–14 (3d Cir. 1996) ("Munsingwear should not be applied blindly, but only after a consideration of the equities and the underlying reasons for mootness."). In particular , U.S. Bancorp emphasized that when mootness results fr om the voluntary action of the party seeking relief from the judgment below, vacatur should not be granted unless doing so would serve the public interest. See U.S. Bancorp, 513 U.S. at 25–29. In such cases, the Court explained, the public inter est in a robust corpus of judicial precedent nor mally outweighs the party's interest in relief from the judgment, "the losing party having voluntarily forfeited his legal r emedy by the ordinary processes of appeal or certiorari, thereby surrendering his claim to the equitable r emedy of vacatur." Id. at 29. "Thus, absent unusual circumstances, the appellate vacatur decision under Bancorp is informed almost entirely, if not entirely, by the twin considerations of fault and public interest." Valero Terrestrial, 211 F.3d at 118.

15

U.S. Bancorp refused vacatur in a case in which the losing party below mooted the action by settling pending appeal. Today, we must decide whether this same presumption against vacatur is appropriate when a governmental appeal is mooted by legislative amendment. The Court of Appeals for the District of Columbia Circuit recently addressed this same question, and we find its reasoning persuasive:

> Clearly, the passage of new legislation repr esents voluntary action, and thus on its face the Bancorp presumption might seem to govern. W e believe, however, that application of the Bancorp presumption in this context is not required by the Bancorp opinion's rationale and would be inappropriate, at least if there is no evidence indicating that the legislation was enacted in order to overturn an unfavorable precedent. The rationale underlying the Bancorp pr esumption is that litigants should not be able to manipulate the judicial system by "roll[ing] the dice. . . in the district court" and then "wash[ing] away" any"unfavorable outcome" through use of settlement and vacatur. The mere fact that a legislature has enacted legislation that moots an appeal, without more, provides no grounds for assuming that the legislature was motivated by such a manipulative purpose. The legislature may act out of reasons totally independent of the pending lawsuit, or because the lawsuit has convinced it that the existing law is flawed.

National Black Police, 108 F.3d at 351–52; see also Valero Terrestrial, 211 F.3d at 120 (U.S. Bancorp counsels vacatur where challenge is rendered moot by state's amendment of challenged statute).

Eagle nevertheless argues that the recor d in this case militates against vacatur, because the F AA "is a knowing beneficiary of a legislative change backed by an illegitimate motive--i.e., to frustrate an unfavorable judgment." We cannot agree. Mindful of the fact that "legislative actions are presumptively legitimate," we ar e "wary of impugning the motivations that underlie a legislature's actions." National Black Police, 108 F.3d at 352. Eagle's claim of "persistent misuse of the legislative process" rings hollow.

16

There is no suggestion that Congress failed to follow constitutionally prescribed procedur es in passing the 2000 Amendment. And, although Eagle argues that Congress's actions represent an attempt to frustrate an adverse judgment, the new legislation could just as cr edibly be viewed as a commendable effort "to r epair what may have been a constitutionally defective statute." American Library Ass'n v. Bar, 956 F.2d 1178, 1185 (D.C. Cir. 1992). In short, Eagle has presented no evidence to indicate that the 2000 Amendment represents "manipulation of the legislative process" rather than "r esponsible lawmaking." Id.

Accordingly, we believe that equity would best be served by vacating the District Court's judgment as to the facial unconstitutionality of the 1996 Amendment.9

C.

Eagle's as-applied constitutional claims against the Airport Authority and its directors, however , require a different analysis. Pursuant to the 1996 Amendment, Eagle requested that the Authority approve construction and operation of Happy Landing. Count IV of Eagle's Complaint alleged that the Authority and its directors, in denying that request, violated Eagle's rights to procedural and substantive due process, equal protection, and freedom from taking without just compensation. The District Court granted summary judgment in favor of the defendants on these claims, and on appeal, Eagle contests that District Court's decision with respect to the pr ocedural and substantive due process claims.

We do not believe that the passage of the 2000 Amendment has mooted these claims. Unlike Eagle's facial constitutional challenges, which sought only pr ospective declaratory and injunctive relief,10  the due process claims

_____

9. In so doing, we do not express any view as to the correctness of the District Court's ruling on Eagle's equal protection claim regarding the 1996 Amendment or as to the validity of any of Eagle's other facial challenges.

10. We recognize that Eagle's Complaint, on its face, includes a prayer for compensatory and punitive damages as to each of its facial

17

set out in Count IV sought damages against the Authority and its members. "A case is saved from mootness if a viable claim for damages exists." National Iranian , 983 F.2d at 489. In Phillips v. Borough of Caper ed, 107 F.3d 164, 177 (3d Cir. 1997) (en banc), we held that the substitution of a new, less restrictive adult bookstore or dinance for the previous, more restrictive one did not moot plaintiffs' S 1983 damages claim arising out of the application of the prior ordinance. Similarly, in Ransom v. Maoris, 848 F.2d 398 (3d Cir. 1988), where plaintif fs challenged municipal sewer and water service regulations, we held:

> The plaintiffs further attempt to avoid the mooting of their procedural due process claims by asserting that the publication of new regulations, even if they now satisfy the due process notice requir ements, does not answer their claim of damages due to a deprivation of notice prior to their publication and resulting from the imperfection of liens. The plaintiffs ar e correct in their contention that the issuance of the new regulations does not moot this damage claim based on the alleged constitutional notice defect prior to their publication.

Id. at 410; see also Naturist Soc'y, 958 F.2d at 1519 ("the claim for damages saves from mootness the Society's contention that the `old' park regulations were unconstitutional as applied to it"). Eagle's claim for damages for the past application of the 1996 Amendment

_____

challenges. (App. 31, 33, 34.) In its supplemental briefing on the mootness issue, however, Eagle admits that it has abandoned its damages claims on these counts and at summary judgment only sought declaratory and injunctive relief against the F AA and Beckman:

> Eagle sued the FAA, in the person of Jane Harvey, and Steven Beckman in their official capacities only, and did not seek damages in conjunction with their actions. In Counts I, II and III, Eagle sought to have the [1996 Amendment] declar ed unconstitutional (on equal protection, bill of attainder or non-delegation grounds) and the
> FAA and Beckman enjoined from applying or enforcing it against Eagle.

Eagle Letter Brief, May 24, 2000, at 2-3 (emphasis in original; citations omitted).

18

invests it with a continuing, concrete stake in the outcome of this litigation that has not been redr essed by the passage of the 2000 Amendment. Therefore, we will address these claims on the merits.

III.

We first consider Eagle's procedural due process claim. Eagle complains that, although it was given the opportunity to submit documentation in support of its application, it was not given a chance "to review all infor mation received by the Airport Authority and to submit responsive comments." Khodara Reply Br. at 12. Eagle also complains that it received no hearing before its application was denied. Id. at 11.

The procedures followed by the Airport Authority were not exemplary, but Pennsylvania law provided an avenue for Eagle to contest the Authority's action. Under 2 Pa. Cons. Stat. Ann. S 752, "[a]ny person aggrieved by an adjudication of a local agency who has a dir ect interest in such adjudication shall have the right to appeal therefrom to the court vested with jurisdiction of such appeals by or pursuant to Title 42 . . . ." The Airport Authority falls within the definition of a "local agency,"11 and therefore Eagle could have challenged the Authority's decision in the state court system.

We need not decide here whether these pr ocedures would be constitutionally sufficient if a favorable decision by the Airport Authority would have enabled Eagle to begin operation of the landfill immediately or within a short time thereafter. Here, on September 25, 1996--almost four months before the Airport Authority's adverse action--the PDEP suspended Eagle's construction permits for Happy Landing because the proposed site contained pr otected wetlands. Both the Pennsylvania Environmental Hearing

_____

11. A "local agency" is "[a] gover nment agency other than a Commonwealth Agency." 2 Pa. Cons. Stat. Ann.S 101. The Clearfield-Jefferson County Regional Airport Authority was created under 53 Pa. Cons. Stat. Ann. S 47493. It is plainly a government agency but not an agency of the Commonwealth itself.

19

Board and a state court have upheld this suspension, which continues in effect pending Eagle's latest appeal. Consequently, even if the Airport Authority had granted Eagle permission to construct the landfill pursuant to the 1996 Amendment, Eagle would have been unable to do so because of the suspension of the construction per mits. Under these circumstances, the availability of review under 2 Pa. Cons. Stat. Ann. S 752 satisfied due process. Cf. Cohen v. City of Philadelphia, 736 F.2d 88, 86 (3d Cir. 1984)(state may provide adequate due pr ocess when it provides " `reasonable remedies to rectify a legal error by a local administrative body' ") (citation omitted). "[I]dentification of the specific dictates of [procedural] due process requires consideration of thr ee distinct factors: First, the private interest that will be af fected by the official action; second, the risk of an erroneous deprivation of such interest through the procedur es used, and the probable value, if any, of additional or substitute pr ocedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Mathews v. Eldridge, 424 U.S. 319, 335 (1976). In this case, although Eagle had a substantial interest in the development of its property as a landfill, Eagle could not have developed the pr operty for this landfill use until it obtained the necessary permits from the PDEP. While Eagle was attempting to obtain those permits, it could have contested the action of the Airport Authority in the state courts. Thus, as a practical matter, the adverse effects during the relevant time period of the Airport Authority's action were not substantial. Similarly, the risk of an erroneous deprivation of Eagle's property interest in any practical sense was not gr eat. And because Eagle presumably could have obtained state court review before the Airport Authority's action had any substantial practical bite, the comparative benefit of better procedures at the administrative level was diminished. Under these circumstances, we hold that Eagle's procedural due process rights were not violated. This case dif fers greatly from the typical case in which only post-deprivation pr ocess is available.

20

Nor do we find a violation of Eagle's substantive due process rights. Eagle's briefs do not ar gue that the Airport Authority denied its application for a reason that is " `tainted by improper motives.' " Nicholas v. Pennsylvania State University, 227 F.3d 133, 139 (3d Cir. 2000)(citation omitted). Rather, Eagle contends that "[t]he Airport Authority's review was anything but car eful and considered," that its decision was contrary to "overwhelming evidence that the Happy Valley Landfill posed no safety threat to the Airport," that"the Airport Authority members were confused," and that they were unable to articulate a basis for their decision. Khodara Reply Br. at 13-15. Courts must exercise caution before recognizing substantive due process claims. See, e.g., County of Sacramento v. Lewis, 523 U.S. 833, 842 (1998); Albright v. Oliver, 510 U.S. 266, 271(1994); Collins v. City of Harker Heights, 503 U.S. 115, 125 (1992); Nicholas, 227 F.3d at 140; Fagan v. City of Vineland, 22 F.3d 1296, 1306 n.6 (3d Cir. 1994 (en banc). For purposes of discussion we will assume that Eagle's hoped-for use of its Happy Landing site as a landfill constituted a constitutionally protected property interest. With this as pr edicate, it would seem that Eagle's substantive due process challenge to the Airport Authority's denial of Eagle's application goes to the manner in which the Airport Authority arrived at its decision. The core of Eagle's complaint is the contention that the Airport Authority's decision was not rationally supported by substantial evidence. But precisely this contention could have been brought before a state court in the appellate review of the Airport Authority's decision whose availability, we have determined, satisfied the requirements of procedural due process. Under these cir cumstances, we conclude that the state court review which Eagle did not elect to pursue constituted sufficient protection of Eagle's asserted substantive due process rights.

IV.

For the foregoing reasons, Appeals No. 99-3458 and 99-3475 are dismissed as moot, and that portion of the District Court's judgment concerning the facial constitutionality of the 1996 Amendment is vacated. The

21

District Court's grant of summary judgment in favor of the Airport Authority and its directors is affir med. The case is remanded for further proceedings consistent with this opinion. On remand, Eagle should be affor ded the opportunity to amend its pleadings so that the District Court may have the opportunity to address any claims regarding the 2000 Amendment.

A True Copy:
Teste:

      Clerk of the United States Court of Appeals
      for the Third Circuit

22